Ona Mae REED, et al., Plaintiffs,

v.

William L. LUKHARD, et al., Defendants.

Civ. A. No. 83–0493.

United States District Court, W.D. Virginia, Roanoke Division.

July 26, 1984.

Claude Lauck, Legal Aid Society of Roanoke Valley, Roanoke, Va., Gilman Roberts, Va. Legal Aid Society, Inc., Danville, Va., Jill Hanken, Virginia Poverty Law Ctr., Inc., Richmond, Va., Claire E. Curry, Client Centered Legal Services of S.W. Va., Inc., Castlewood, Va., for plaintiffs.

John P. Alderman, U.S. Atty., E. Montgomery Tucker, Asst. U.S. Atty., Roanoke, Va., Diane C. Moskal, Regional Atty., Charlotte Hardnett, Asst. Regional Atty., Region III, HHS, Philadelphia, Pa., John A. Rupp, Sr. Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

### PROCEDURAL POSTURE

This case is before the court on cross-motions for summary judgment. Plaintiffs Ona Mae Reed, Sallie Long, and Ruth Wilcher instituted this action on June 6, 1983 on their own behalf and on behalf of a proposed class of persons similarly situated. They seek injunctive and declaratory relief pursuant to 5 U.S.C. § 701–706 and 42 U.S.C. § 1983 in connection with the termination of benefits under § 602(a)(17) of the Aid to Families with Dependent Children Program (AFDC).[1] Jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1343.

After a hearing on plaintiffs' motion for a preliminary injunction this court entered an order on June 28, 1983 enjoining the defendants from applying the "lump sum" income rule of 45 C.F.R. § 233.-20(a)(3)(ii)(D) and *ADC Manual* § 305.4(c) to all three named plaintiffs.[2] Plaintiffs' request for a preliminary injunction as to the proposed class was, however, denied. *Reed v. Lukhard,* 578 F.Supp. 40, 45 (W.D. Va.1983). On August 1, 1983, the court ordered joinder of the Secretary of HHS as a necessary defendant. Thereafter, the court granted the motions of Opal Mae Cook and Stella King for intervention as individual plaintiffs. The matter is now ripe for summary judgment and for disposition of plaintiffs' motion for class certification.

---

**1.** The program is administered by the defendant Heckler, Secretary of the Department of Health and Human Services (HHS), at the federal level and by the defendant Lukhard as Commissioner of the Department of Social Services, at the state level. *See* § 63.1–86 *et seq.,* Code of Virginia (1950). Regulations governing the AFDC Program in Virginia are found in *ADC Manual* § 201 *et seq.*

**2.** 45 C.F.R. § 233.20(a)(3)(ii)(D) is the federal regulation implementing § 602(a)(17): § 305.4c is the state implementing regulation. *See supra* notes 3 & 4 for full text.

## STATEMENT OF FACTS

In 1981, Congress enacted the Omnibus Budget Reconciliation Act, Pub.L. 97–35 which amended the ADFC Program, 42 U.S.C. § 601 *et seq.* Section 602(a)(17) was added, which changed the treatment of lump sum payments received by AFDC applicants or recipients. Prior to enactment of this section, if an AFDC assistance unit received nonrecurring lump sum funds they were considered "income" in the month of receipt and the recipient was rendered ineligible for AFDC benefits. Once the funds were reduced to the state's standard of need and the recipient was otherwise eligible for AFDC, the assistance unit would be reinstated on the AFDC rolls. This new section requires state AFDC plans to provide for a period of ineligibility for AFDC recipients as follows:

A State plan for aid and services to needy families with children must ... (17) provide that if a person specified in [§ 602 8(a)(i) or (ii)] receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8), exceeds the State's standard of need applicable to the family of which he is a member—

(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8), divided by (ii) the standard of need

applicable to such a family, and (B) any income remaining (which amount is less than the applicable monthly standard) shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A).

§ 602(a)(8), which is incorporated by reference into § 602(a)(17) specifies:

that, with respect to any month, in making the determination [of need] under [§ 602(a)(7)], the State agency—

(i) shall disregard all of the earned income of each dependent child receiving aid to families with dependent children who is (as determined by the State in accordance with standards prescribed by the Secretary) a full-time student or a part-time student who is not a full-time employee attending a school, college or university, or a course of vocational or technical training designed to fit him for gainful employment;

(ii) shall disregard from the earned income of any child or relative applying for or receiving aid to families with dependent children, or of any other individual (living in the same house as such relative and child) whose needs are taken into account in making such determination, the first $75 of the total of such earned income for such month (or such lesser amount as the Secretary may prescribe in the case of an individual not engaged in full-time employment or not employed throughout the month).

Pursuant to 45 C.F.R. § 233.-20(a)(3)(ii)(D) [3], the federal defendant's regulation implementing § 602(a)(17), *all* recip-

---

**3.** 45 C.F.R. § 233.20(a)(3)(ii)(D) provides as follows:

Net income, except as provided in paragraph (a)(3)(xii) of this section, and resources available for current use shall be considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance. When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of nonrecurring lump sum income, the family will be ineligible for aid for the full number of months

derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size. Any income remaining from this calculation is income in the first month following the period of ineligibility. The period of ineligibility shall begin with the month of receipt of the non-recurring income or, at State option, as late as the corresponding payment month. For purposes of applying the lump sum provision, family includes the AFDC assistance unit and any other individual whose lump sum income is counted in determining the period of ineligibility. A State may shorten the period of ineligibility where it finds that a life-

ients of nonrecurring lump sum income from *any source* are subject to the lump sum rule. The state defendant has adopted this interpretation in § 305.4c, Virginia *ADC Manual*[4].

Plaintiffs challenge the defendants' treatment of nonrecurring lump sum compensation for personal injuries on two grounds. First, they contend that the statutory language of § 602(a)(8) clearly excludes from the period of ineligibility specified in § 602(a)(17) those AFDC recipients who have no earned income in the month of receipt of a personal injury award. Second, they maintain that since money received in compensation for personal injuries merely restores the injured party to the *status quo*, it does not constitute "income" within the meaning of the lump sum rule. According to plaintiffs, such funds must be treated as "resources," which would render the recipient ineligible for benefits only as long as total resources exceeded the state's standard of need for the family.[5] Under the defendants' current treatment as "income" subject to the lump sum rule, the period of ineligibility varies depending on the amount of the lump sum and continues for a time certain, regardless of when the funds are exhausted.

A full statement of the facts surrounding the three original plaintiffs' claims appears in this court's opinion of June 28, 1983 and will not be repeated here. *See* 578 F.Supp. at 41, 42. It is sufficient to note that of the five named plaintiffs, four received nonrecurring lump sum income from personal injury awards which resulted in the establishment of a period of ineligibility for AFDC benefits. The remaining plaintiff Reed, received a worker's compensation award and was similarly ineligible for AFDC benefits. For all plaintiffs, the lump sums were allegedly exhausted before the expiration of their respective periods of ineligibility.

Before proceeding to a disposition of the summary judgment issues the court will address plaintiffs' motion for class certification.

## CLASS CERTIFICATION

Plaintiffs contend that since defendants' policies are in effect throughout the Commonwealth, class relief is the only appropriate vehicle for vindication of their rights. They seek a classwide injunction enjoining defendants from applying the lump sum rule to AFDC recipients without earned income and to recipients of personal injury awards, as well as a classwide declaration of plaintiffs' rights to reimbursement of benefits improperly denied beginning October 1, 1981. Plaintiffs further assert that should the court determine that their AFDC benefits were unlawfully terminated or reduced after October 1, 1981, appropriate relief would include issuance of a notice to all class members informing them of the court's decision and advising them of any state administrative procedures available for reimbursement of benefits improperly denied.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, a class may be certified

---

threatening circumstance exists, and the nonrecurring income causing the period of ineligibility has been or will be expended in connection with the life-threatening circumstance. Further, until that time the nonrecurring income must have been used to meet essential needs and and currently the assistance unit must have no other income or resources sufficient to meet the life-threatening circumstance.

**4.** Lump Sum Payments—The receipt or expected receipt (during the prospective cycle) of a nonrecurring lump sum payment such as the accumulation of benefits for a prior period, earned income tax credit refund, an insurance settlement, loans for current living expenses or from any other unearned source, must be pro-

rated and reflected as income when the lump sum plus all other net countable income exceeds the standard of need (100 percent) in the month of receipt.

Monies received from THE SALE OR CONVERSION OF ANY REAL OR PERSONAL PROPERTY are not considered a lump sum. (See Section 303.3)

In situations where a child receives a lump sum, the option to exclude the child and the income is prohibited. Lump sum payments received by any member of the assistance unit must be used to establish continued eligibility or ineligibility of the unit.

**5.** *See* 42 U.S.C. § 602(a)(7)(B); 45 C.F.R. § 233.-20(a)(3)(i)(B); *ADC Manual* § 303.2(E).

by the court if it meets the four criteria of subsection (a) which requires that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, at least one of the conditions set forth in subsection (b) must be fulfilled in order to maintain a class action. Plaintiffs invoke subsection (b)(2) as applicable to their case. That section provides for classwide relief if:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

For the reasons stated, the court believes that classwide relief is necessary and appropriate, but that the class, as drawn by the plaintiffs, is overinclusive. Therefore, the court will certify the following class of individuals in this case:

All those persons in Virginia whose benefits, since 10–1–81, have been, continue to be, or will be denied, reduced, or terminated solely because of the "lump-sum" policies set out at 45 C.F.R. § 233.-20(a)(3)(ii)(D) and at *ADC Manual* § 305.4c whose "lump-sum" was or will be derived from compensation for personal injuries.

■ Neither the plaintiffs nor the state defendants have been able to determine the exact number of cases where the denial or termination of AFDC benefits was based solely on the receipt of personal injury awards or settlements. The record indicates, however, that from October 1, 1981 through August 1983 at least 669 AFDC cases were terminated and 100 applications for benefits were denied because of the lump sum rule. *See* Defendants' Responses to Interrogatories. The record also re-

flects that approximately 231 AFDC cases are terminated annually in Virginia because of lump sum insurance settlements from insurance policies not owned by the AFDC assistance unit. *See* Plaintiffs' Reply Brief In Response To Defendants' Briefs In Opposition to Plaintiffs' Motion For Class Certification, Exh. 1. While the plaintiffs have the burden of demonstrating the existence of a class whose bounds are precisely drawn, *Cape Henry Bird Club v. Laird*, 484 F.2d 453 (4th Cir.1973), they are not required to specify the exact number of potential class members. *Fisher v. Kletz*, 41 F.R.D. 377, 384 (D.C.N.Y. 1966) and *Marshall v. Electric Hose and Rubber Co.*, 68 F.R.D. 287, 291 (S.D.N.Y. 1966). Moreover, "where the plaintiff has demonstrated that the class of persons he or she wishes to represent exists, that they are not specifically identifiable supports rather than bars the bringing of a class action, because joinder is impracticable." *Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638, 645 (4th Cir.1975). Joinder of all members of the class is impracticable because of the present administrative difficulty in identifying AFDC recipients whose benefits have been denied or terminated because of the lump sum rule. Thus, the record in this case contains ample evidence that the proposed class satisfies the requirement of numerosity.

■ With regard to the remaining requirements of Rule 23, it is clear that common questions of law or fact exist with respect to the class as drawn by the court: the identical statutory rights of all members of the class have been allegedly violated by the defendants' "lump-sum" policies. Each of the five plaintiff representatives received the lump sum funds as compensation for personal injuries suffered either by herself or by her children making their claims typical of the claims of the class. Each of the five plaintiff representatives has suffered loss of AFDC benefits. This personal stake in the outcome of the case ensures zealous pursuit of the action such that the rights of the class are certain to be protected. *Rodriguez v. Swank*, 318 F.Supp. 289, 294 (N.D.Ill.1970), *aff'd* 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677

(1971). The court finds, therefore, that the four requirements of Rule 23(a) have been satisfied. Furthermore, it is clear that the defendants have acted on grounds generally applicable to the class such that 23(b)(2) is also satisfied.

The defendants contend that even if Rule 23 is satisfied, the court should not allow maintenance of the case as a class action because it is unnecessary to do so. They argue that the court should deny class certification because relief can be granted in such a way as to benefit not only the claimants, but also all other persons subject to the policies under attack. *Sanford v. R.L. Coleman Realty Co., Inc.*, 573 F.2d 173 (4th Cir.1978). It is the defendants' position that if the requested declaratory and injunctive relief is entered in favor of the individual plaintiffs the state would then offer the relief granted to any eligible persons in the proposed class. As a result, no plaintiff class is needed. The court does not agree.

While injunctive and declaratory relief will often inure to the benefit of all members of a proposed class without class certification, such is not the case here. The class as defined by the court includes individuals who have been denied eligibility or have been terminated from the AFDC Program because of defendants' policies. A declaration that those policies are unlawful, as well as an injunction against future application of the lump sum rule, will afford no relief to individuals who have been denied AFDC in the past unless they are notified of the court's decision that they were improperly denied benefits. Without such notification, it is unlikely that those

individuals would be informed that they could seek retroactive AFDC benefits either through state administrative procedures or through state courts.[6]

The United States Supreme Court has addressed the necessity of this type of notice in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The Court held that the eleventh amendment did not bar a federal court from ordering a state to advise class members of the outcome of the case and of the availability of state administrative procedures. In a similar situation[7], this court previously found that explanatory notice of the type requested here was appropriate and necessary. Quoting *Quern*, the court reasoned that:

such notice "in effect simply informs class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state administrative procedures which they may wish to pursue." Whether class members would have to pursue administrative remedies, file a court action, or seek legislative assistance is not relevant to the propriety of notifying plaintiffs of their ... rights. These are matters of state law which contain "numerous missing links, which can be supplied, if at all, only by the state and members of the plaintiff class and not by a federal court."

*Randall v. Lukhard*, 536 F.Supp. 723, 731 (W.D.Va.1982), *aff'd in part and rev'd in part*, 709 F.2d 257 (4th Cir.1983) (Citations omitted.)

Accordingly, the plaintiffs' motion for class certification, as modified by the court, will be granted.[8]

---

**6.** No monetary relief, such as retroactive AFDC benefits, can be awarded by this court pursuant to the eleventh amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

**7.** *Randall v. Lukhard* involved Virginia's transfer of assets rule, which disqualified medicaid applicants or recipients who had transferred property to other persons for less than fair market value. In a class action, plaintiffs sought declaratory and injunctive relief.

**8.** The defendants' cite a number of cases for the proposition that class certification is not neces-

sary in this case. *See* Memorandum in Support of Federal Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs's Motion For Summary Judgment And For Class Certification. Unlike the instant case, however, these cases involve situations where injunctive and declaratory relief would provide full relief to all members of a proposed class without class certification. For example, in *Sandford v. R.L. Coleman Realty Co., Inc.*, 573 F.2d 173 (4th Cir.1978), the court of appeals decided that the need for class certification would disappear upon entry of an injunction "in favor of the plaintiff ... and any other blacks who, in the

## THE LUMP SUM RULE AS APPLIED TO AFDC RECIPIENTS WITHOUT EARNED INCOME

Plaintiffs' first challenge to the defendants' treatment of lump sum compensation for personal injuries is one of statutory construction. They assert that the statutory provision of 42 U.S.C. § 602(a)(17) plainly limits the rule to families with earned income at the time they received their lump sum. In support of this claim, plaintiffs point to the relationship between § 602(a)(17) and § 602(a)(8)(A)(i) and (ii). More specifically, plaintiffs posit that § 602(a)(17) sets out the lump sum rule and then limits its application to "a person specified in paragraph 8(a)(i) or (ii)"; that the persons so specified are *only* those with earned income; and therefore, the lump sum rule applies only to those AFDC recipients with earned income. The defendants argue that 8(a)(i) and (ii) merely describe categories of AFDC recipients covered by the lump sum rule, and then specifies treatment for any earned income which they may have. Both plaintiffs and defendants maintain that the statute, by its literal terms, clearly supports their respective positions. The court previously addressed this issue in its opinion on plaintiffs' motion for a preliminary injunction. The court found then that:

> Plaintiffs' position ... is nothing but wishful thinking. If anything is to be decided from reading those two provisions in isolation, it would have to be in favor of the defendants' contentions: § 602(a)(8)(A)(i) and (ii), without question, set forth certain categories of recipients, and then provide that certain portions of the "earned income" of those recipients be disregarded in making eligibility and

need determinations under § 602(a)(7). It does not necessarily follow that the category of recipients set forth in § 602(a)(8)(A)(i) and (ii), as incorporated by § 602(a)(17), includes only those having earned income; to argue that it does suggest[s] an uncritical reading of the provisions.

578 F.Supp. at 43–44.

Mindful of the liberal standard for granting a preliminary injunction,[9] the court cited *Sweeney v. Affleck,*[10] and *Faught v. Heckler*[11] as demonstrating that plaintiffs had a colorable chance of prevailing on the merits sufficient to warrant the imposition of preliminary injunctive relief upon defendants. 578 F.Supp. at 44 (citations omitted). In *Sweeney* the district court granted summary judgment for a class which consisted of former AFDC recipients whose benefits were terminated for a specified period of time following receipt of lump sum income in a month when they had no earned income. The court found that the statutory language, the legislative history, and the purpose of the AFDC program supported plaintiffs' restrictive reading of the scope of the lump-sum rule. 560 F.Supp. 1118. The court in *Faught* likewise granted preliminary relief to plaintiffs. *See* 577 F.Supp. 1180 at 1184. These cases no longer lend support to plaintiffs' position here on summary judgment.

■ On April 27, 1984, the Court of Appeals for the First Circuit reversed the district court in *Sweeney.*[12] After an extensive analysis of the relevant statutory language, the court of appeals held that "the ... language itself could support either [plaintiff's or defendant's] construc-

---

future, may be denied equal access to housing under the defendants' control." Id. at 179. The plaintiffs in *Sandford* were seeking prevention of future wrong to a class members, while plaintiffs here seek not only a correction of future wrong, but also a correction of past wrongs for individuals already denied benefits.

**9.** In determining whether to issue a preliminary injunction, the court must "balance the hardships" by considering the "flexible interplay" among four factors: "the likelihood of irreparable harm to the plaintiff if the preliminary in-

junction is denied; the likelihood of harm to the defendant if the requested relief is granted; the likelihood that plaintiff will succeed on the merits; and the public interest." *Federal Leasing v. Underwriters at Lloyd's,* 650 F.2d 495, 499 (4th Cir.1981).

**10.** 560 F.Supp. 1118 (D.R.I.1983).

**11.** No. 83–66–A (S.D. Iowa April 5, 1983).

**12.** *Sweeney v. Murray,* 732 F.2d 1022, 1030 (1st Cir.1984).

tion, but not without some strain." 732 F.2d at 1027. The court found it necessary, therefore, to review the legislative history and administrative interpretations of the statute. The court then concluded that

> [t]he legislative history of 42 U.S.C. § 602(a)(17) is as clear as its language is ambiguous. Committee reports reveal that Congress had two major motives in amending subsection (a)(17): to promote responsible budgeting of lump-sum income by all AFDC families and to reduce AFDC disbursements by a specified amount based on calculations that had assumed application of the lump-sum rule to all AFDC families, not only to those AFDC families with earned income.

In light of the decision in *Sweeney*, the court is likewise of the opinion that the language used by Congress in enacting the lump-sum rule at 42 U.S.C. § 602(a)(17) is ambiguous. For the reasons given in *Sweeney*, the court concludes that the defendants' interpretation that the statute applies to AFDC recipients regardless of whether they have earned income is consistent with the legislative history and will not be disturbed.[13] The court does not agree, however, with defendants' position that the statute is inclusive of lump sum compensation for personal injuries.

## LUMP SUM COMPENSATION FOR PERSONAL INJURIES AS "INCOME"

Plaintiffs maintain that the lump sum rule should not be applied to awards for personal injuries because the term "income," as used in the statute, is not inclusive of awards which merely compensate plaintiffs for losses suffered. Plaintiffs argue that by receiving monetary compensation for personal injuries the recipient has merely exchanged one resource, a whole and healthy body, for another. There has been no gain, thus no income. They point to defendants' own definition of "resource" in support of this position. That is, Virginia's ADC regulations on "re-

sources" provide that the sale or conversion of real or personal property is not counted as lump sum income. ADC Manual §§ 303.3 and 305.4C. These state regulations track the federal policy of treating as a resource the conversion of a non-liquid asset into cash. 47 *Fed.Reg.* No. 25 at 5657. Plaintiffs complain that the defendants' failure to similarly treat compensation for personal injuries leads to the following unconscionable results:

> Ex. 1. Ms. H and her two children live in Roanoke and receive $255 AFDC each month. If Ms. H's home burns down and she receives a $20,000 insurance award, she may spend the insurance proceeds on anything she wants and as quickly as she wishes. She can reestablish her AFDC eligibility as soon as her countable resources fall below $600. However, if Ms. H's body is burned in a fire, and she receives $20,000 to compensate her loss, the money is treated as lump sum *income*. Ms. H and her children are disqualified from the AFDC program for almost 6 years. [20,000 divided by 283 (the standard of need) = 70.67 months], even if the money is expended before that period ends.

> Ex. 2. Ms. H's youngest child, Johnny, is hit by a car and injured. Ms. H's insurance company pays Johnny for $1000 for his injuries. The family can qualify for AFDC when their available resources fall below $600. On the other hand, if the driver's insurance company pays Johnny for his injuries, the money is treated as lump sum *income* and the family is disqualified from AFDC for 3 months and their benefits in the 4th month are reduced to $104. ($1000 divided by 283 = 3.5 months. $151 of the lump sum remains in the 4th month and is subtracted from the $255 payment.)

Plfs. Memo in Support of Motion for Summary Judgment at 27. Plaintiffs submit that it is irrational to afford more favorable treatment to the damage of a material resource, such as a car or a home than that

---

**13.** *See also Callejas v. McMahon,* No. C–83–3136 EFL (N.D.Ca. Sept. 2, 1983) at 4–5; *accord; Faught v. Heckler,* 577 F.Supp. 1180 (S.D.Iowa 1983); *Betson v. Cohen, 578 F.Supp. 154 (E.D.La. 1983).*

afforded the damage to one's body and that Congress did not intend such an application of the lump sum rule. Defendants take the position that Virginia's treatment of personal injury awards is not inconsistent with any AFDC statutory or regulatory provision and urge the court to uphold their interpretation of the statute as a reasonable exercise of executive discretion.

### The Standard of Review

 The applicable standard of review, 5 U.S.C. § 706(2), the Administrative Procedure Act, provides that

the reviewing court shall set aside agency action, findings, and conclusions found to be (A) arbitrary and capricious, an abuse of discretion or otherwise not in accordance with law ....

*Camp v. Pitts*, 411 U.S. 138 at 142, 93 S.Ct. 1241 at 1244, 36 L.Ed.2d 106 (1973).

This standard is a highly deferential one, presuming agency action to be valid. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977). While the court is not permitted to substitute its judgment for that of the agency, this does not mean that the court must rubber-stamp the agency's interpretation as correct. To do so would render the review process superfluous. *Ethyl Corp. v. Environmental Protection Agency*, 541 F.2d 1 (D.C.Cir. 1976). Therefore, when reviewing the propriety of the defendants' interpretation of the lump sum rule the court will reject the regulatory scheme only if it finds that it lacks a reasonable basis. *Connor v. Finch*, 314 F.Supp. 364, 369 (N.D.Ill.1970); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Mindful of this limited review, and for the reasons stated, the court concludes that it is unreasonable to apply the lump sum rule to nonrecurring lump sum compensation for personal injuries. The language of § 602(a)17 clearly applies the extended disqualification provision of the lump sum rule to "income" and not to "resources:"

When an ADC recipient receives in any month an amount of *income* which, together with all *other income* ... exceeds the state's standard of need ... [the family is ineligible for further aid for a period equal to the number of months computed by dividing the lump sum, and other income, by the state's monthly ADC standard of need]. (emphasis supplied).

The federal implementing regulation in question also applies specifically to "income."[14] "Income" is not, however, expressly defined in the statute or in the regulation. The legislative history accompanying the lump sum amendment also fails to define the term. It is, however, instructive to note that in considering the appropriate statutory language the Senate Finance Committee commented as follows:

Under present law, *any payments that meet the definition of income* (e.g., retroactive social security benefits) are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered a resource in the months thereafter. The committee amendment would require that large payments, *together with other income* remaining after the application of disregards, be considered available to meet ongoing needs in the AFDC program. If such income exceeds the standard of need, the household would be ineligible for aid.

1981 U.S.Code Cong. & Ad.News 396, 693 at 702.

In the court's opinion, this language strongly supports plaintiffs' position that Congress did not intend to include compensation for personal injuries in the lump sum rule. The explicit reference to "payments that meet the definition of income" compels the conclusion that Congress contemplated the existence of lump sum payments which do not constitute "income." Likewise, the language which links "large payments together with *other income*" reinforces this conclusion. To say that Congress meant to define *all* lump sums as "income" would

---

**14.** *See supra* note 3 at 4.

fly in the face of the inferences which are reasonably drawn from these express references and would render them superfluous. The court can find nothing in the record to warrant such a finding. Furthermore, it is a fundamental canon of statutory construction that where Congress uses terms that have accumulated settled meaning under either equity or common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of the term. *NLRB v. Amax Coal Co.*, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981); *accord; Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *Malat v. Riddell*, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); *Richard v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). The court is of the opinion that the established, common meaning of "income" does not encompass compensation for personal injuries.

The logical starting point for the common, established meaning of "income" is the dictionary:

Income—the amount of money or its equivalent received during a period of time in exchange for labor or services, from the sale of goods or property, or as profit from financial investments.

*American Heritage Dictionary*, 2d Ed. *Black's Law Dictionary*, 5th Ed. defines income as

"the return of money from one's business, labor, or capital invested; gains, profits, salary, wages, etc.... The true increase in amount of wealth which comes to a person during a stated period of time."

These definitions of "income" contemplate a measurable gain to the individual. Compensation for personal injuries, however, functions to restore the recipient to the status she or he enjoyed prior to injury:

It is a recognized and established principle of the law of torts, founded in sound reason, that the compensation awarded to one who is injured, either in person or property, by the wrongful act of another, shall at least be equal to, and should in all cases be commensurate with, the loss or injury sustained.

22 Am.Jur.2d, Damages § 85 note 3 (Citations omitted).

Since such payments are considered to make the individual whole again, the element of measurable gain is lacking.

By way of analogy, the pronouncements of the Supreme Court of the United States on the meaning of "income" in the context of the Internal Revenue Code are also instructive here. In 1919 the Court reiterated what it believed was "income:"

Income may be defined as the gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through a sale or conversion of capital assets....

*Eisner v. Macomber*, 252 U.S. 189 at 207, 40 S.Ct. 189 at 193, 64 L.Ed. 521, quoting *Stratton's Independence v. Howbert*, 231 U.S. 399, 415, 34 S.Ct. 136, 140, 58 L.Ed. 285 and *Doyle v. Mitchell Bros. Co.*, 247 U.S. 179, 185, 38 S.Ct. 467, 469, 62 L.Ed. 1054. Later, the Court clarified the basis for this definition: "this court has consistently refused to enter into the refinements of lexicographers or economists and has approved ... what it believed to be the commonly understood meaning of the term ["income"] which must have been in the minds of the people when they adopted the Sixteenth Amendment to the Constitution. *Merchant's Loan and Trust Company v. Smietanka*, 255 U.S. 509, 519, 41 S.Ct. 386, 388, 65 L.Ed. 751 (1921); *accord, U.S. v. Stewart*, 311 U.S. 60, 63, 61 S.Ct. 102, 104, 85 L.Ed. 40 (1940). Finally, when determining that punitive damages must be included as "gross income" for tax purposes the Court held:

[t]he long history of departmental rulings holding personal injury recoveries nontaxable on the theory that they roughly correspond to a return of capital cannot support exemption of punitive damages following injury to property. *Damages for personal injury are by definition compensatory only.* Punitive damages, on the other hand, cannot

be considered a restoration of capital for taxation purposes. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 432 n. 8, 75 S.Ct. 473, 477 n. 8, 99 L.Ed. 483 (1954). The Internal Revenue Code also excludes from gross income compensation for personal injuries or sickness. 26 U.S.C. § 104.[15]

In light of the aforementioned treatment of personal injury awards, the court concludes that the settled meaning of "income" as expressed by the Supreme Court and as understood in common usage has not been altered by the AFDC statute. Congress has given the court no reason to apply a more particularized meaning of the word in the AFDC context.[16] The court is of the opinion, therefore, that it is irrational to treat a damaged car or home more favorably than a damaged body. Consequently, the defendants' interpretation of the lump sum rule as inclusive of personal injury awards is unreasonable and, as applied to such awards, cannot stand. Summary Judgment is hereby granted for plaintiffs on their second claim for relief. The case shall be set by petition of the parties for further proceedings to determine the appropriate relief to be granted.

**15.** Defendants cite the case of *Betson v. Cohen*, 578 F.Supp. 154 (E.D.La.1983) for the proposition that since personal injury awards are not expressly excluded from application of the statute or the regulation they must be considered as a lump sum. For the reasons stated, the court cannot agree with the conclusions of the court in *Betson*. The court held that the Internal Revenue Code's exclusion of personal injury awards from gross income did not support the claim that those awards are not income for purposes of the AFDC statute. *Id.* at 159. The court stated:

That exclusion ... is expressly established by statute at 26 U.S.C. § 104(a)(2). Were such a provision not made, such awards could be considered income under the Internal Revenue Code general provision of income, 26 U.S.C. § 61(a). *See Roemer v. Commissioner of Internal Revenue*, 716 F.2d 693, 696, n. 2 (9th Cir.1983). ("Since there is no tax basis in

a person's health and other personal interests, money received as compensation for an injury to those interests *might* be considered a realized accession to wealth" absent the exclusion.) The plaintiffs' argument fails in light of these considerations.

578 F.Supp. at 159. (Emphasis supplied.) The court finds this reasoning unpersuasive in light of the Supreme Court's pronouncement in *Glenshaw Glass, supra.* Furthermore, the *Betson* court's reliance on the statutory exclusion of personal injury awards ignores the definition of "income" established by common usage.

**16.** Except to the extent to which the court has discussed governmental provisions dealing with "income" and personal injury awards, the court finds it unnecessary to consider plaintiffs' remaining contention regarding administrative characterizations of compensation for personal injuries.