Eufemia LaMADRID, for herself and as next friend for her minor son, Joey LaMadrid; Debbie Viskov, for herself and as next friend for her minor son, Jeremy Gerber, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Leo HEGSTROM, individually and in his official capacity as Director, Department of Human Resources of the State of Oregon; and Keith Putman, individually and in his official capacity as Administrator, Adult and Family Services Division of the State of Oregon; Margaret Heckler, individually and in her official capacity as Secretary, United States Department of Health and Human Services, Defendants.

Civ. No. 84–1269–PA.

United States District Court, D. Oregon.

Dec. 27, 1984.

Lorey H. Freeman, Amy Veranth, Michael H. Marcus, Legal Aid Service, Portland, Or., for plaintiffs.

Lawrence Young, Asst. Atty. Gen., Dept. of Justice, Salem, Or., for defendant Leo Hegstrom and Keith Putman.

Laury Hennings, Asst. U.S. Atty., Portland, Or., for defendant Margaret Heckler.

PANNER, Chief Judge.

On October 11, 1984, plaintiffs Eufemia LaMadrid, Joey LaMadrid, Debbie Viskov, and Jeremy Gerber filed a complaint requesting a temporary restraining order, a preliminary injunction, and permanent injunctive and declaratory relief. Defendants are Leo Hegstrom, Director, Department of Human Resources of the State of Oregon (DHR), Keith Putman, Administrator, Adult and Family Services Division of the State of Oregon, and Margaret Heckler, the Secretary of the Department of Health and Human Services (DHHS). Plaintiffs also moved for class certification. Pending final resolution, defendants agreed to temporarily grant the requested

relief so the motions for a TRO and preliminary injunction were withdrawn.

Plaintiffs assert four claims for relief. First, the Oregon defendants' policy of counting the money received from a personal injury claim as "income" rather than a "resource" violates the requirements of the Social Security Act (SSA), 42 U.S.C. §§ 602(a)(7), 602(a)(10), and 602(a)(17), and applicable federal regulations. Second, the Oregon defendants' policy of counting the money received from a personal injury claim as "income" while treating money received for damages to personal property as a "resource" denies plaintiffs the equal protection of the laws guaranteed by the fourteenth amendment. Third, the Oregon defendants' policy of failing to notify plaintiffs of the "lump-sum" disqualification policy until after plaintiffs had structured the settlement of their personal injury claim violates plaintiffs' rights under the SSA and applicable federal regulations. Fourth, the Oregon defendants' policy of failing to notify plaintiffs of the "lump-sum" disqualification policy at the time defendants claim their share of a personal injury award or settlement to satisfy their lien or at any time prior to the plaintiffs' actual receipt of the award violates plaintiffs' rights under the SSA.

I DENY plaintiffs' motion for class certification.

Plaintiffs and defendants have filed a stipulated agreement which dismisses the third and fourth claims. I find for the plaintiffs on claims one and two. The Oregon defendants' policy of counting the money received from a personal injury claim as "income" rather than a "resource" violates the requirements of the SSA. Their policy of counting money received from a personal injury claim as "income" while treating money received for damage to personal property as a "resource" denies plaintiffs the equal protection of the laws as guaranteed by the fourteenth amendment.

## FACTS

Plaintiff Eufemia LaMadrid was burned in a fire in April, 1982. Much of her body was severely burned and part of her left hand was amputated as a result. Her left hand and arm are virtually useless. In January, 1984, Ms. LaMadrid settled her personal injury claim resulting from this fire. After satisfying the Adult and Family Services Division lien and paying attorneys' fees, Ms. LaMadrid received $4,750.00 from her $15,000.00 award. She spent this money to replace items lost in the fire and had spent it all by February 1, 1984. Defendants applied the "lump-sum" rule to this $4,750.00 and found Ms. LaMadrid and her son Joey ineligible for Aid to Dependent Children (ADC) benefits for slightly over fifteen months.

Plaintiff Debbie Viskov was severely injured in a car accident and required surgery and extensive hospitalization. Ms. Viskov received $6,893.99 from her personal injury settlement after the Adult and Family Services Division satisfied its lien and attorneys' fees and medical bills were paid. Ms. Viskov and her son Jeremy Gerber were found ineligible for ADC benefits for over twenty-four months pursuant to defendants' "lump-sum" policy.

## I.  CLASS CERTIFICATION.

Plaintiffs moved for certification of a class of all Oregon ADC applicants or recipients who have been, are being, or will be denied ADC benefits or have had their ADC benefits terminated by defendants solely because a member of their family has received a "lump-sum" payment as compensation for a personal injury. Plaintiffs meet the requirements of Fed.R.Civ.P. 23(a).

Where a final judgment will, as a practical matter, produce the same result as formal class-wide certification, a court may exercise its discretion and deny class certification. *James v. Ball,* 613 F.2d 180, 189 (9th Cir.1979), *rev'd on other grounds,* 449 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981). Federal Rule of Civil Procedure 23(b)(3) requires that a class action be found superior to other available methods for the fair and efficient adjudication of the controversy before a class is certified. *See Pattillo v. Schlesinger,* 625 F.2d 262, 265

(9th Cir.1980) (district court did not abuse its discretion in denying class certification when existing administrative proceedings were superior to a class action).

█ Plaintiffs in the present case request injunctive and declaratory relief. As a practical matter, my finding that defendants' policies violate the SSA and the Equal Protection Clause, and my order that defendants be enjoined from applying these policies will apply to and benefit the entire class. In addition, the stipulation between plaintiffs and the Oregon defendants will provide adequate notice to members of the putative class. In the present case, a class action would not be superior to other methods for adjudication. I DENY plaintiffs' motion for class certification.

## II. STATUTORY AND REGULATORY BACKGROUND.

The Aid to Dependent Children (ADC) program is a joint federal and state program established under the SSA, 42 U.S.C. § 601, *et seq.,* which provides monthly financial support for dependent children and their caretaker relatives. The family's income and resources are taken into account in determining ADC eligibility and the amount of benefits. 42 U.S.C. § 602(a)(7); 45 C.F.R. § 233.20(a)(3).

A family is not eligible for ADC if its "resources" are above the allowable resource limits. 42 U.S.C. § 607(a)(7)(B), 45 C.F.R. 233.20(a)(3)(i)(B), OAR 461–04–090. In addition to the home they live in, ADC families may retain up to a maximum of $1,000.00 in resources, one licensed motor vehicle with an equity value up to $1,500.00, household furnishings, clothing, and personal incidentals. *Id.*

## III. THE LUMP–SUM RULE.

In 1981 Congress amended the Social Security Act as part of the Omnibus Budget Reconciliation Act (OBRA), Pub.L. 97–35 (1981). This amendment, 42 U.S.C. § 602(a)(17), provides:

A State plan for aid and services to needy families with children must ... (17) provide that if a person ... receives in any month an amount of income which, together with all other income for that month not excluded under paragraph (8) exceeds the State's standard of need applicable to the family of which he is a member—(A) such amount of income shall be considered income to such individual in the month received, and the family of which such person is a member shall be ineligible for aid under the plan for the whole number of months that equals (i) the sum of such amount and all other income received in such month, not excluded under paragraph (8) divided by (ii) the standard of need applicable to such family, and (B) any income remaining (which amount is less than the applicable monthly standard, shall be treated as income received in the first month following the period of ineligibility specified in subparagraph (A).

Under this amendment, a recipient receiving a lump-sum of income would be expected to live on this sum for as many months as are derived by dividing the income by the state's standard of need.

The Department of Health and Human Services (DHHS) issued a final rule implementing the OBRA mandated changes on February 5, 1982. 45 C.F.R. § 233.-20(a)(3)(ii)(D). This regulation restates the mandate of the Act that, if a family receives lump-sum income, it is ineligible for aid for the full number of months derived by dividing the sum of the lump-sum and other income by the monthly need standard.

Oregon Administrative Rule (OAR) 461–04–512 states that an ADC application must be denied or a grant closed when a family receives a lump-sum payment of income which exceeds the family's needs at ADC standards. OAR 461–04–105(3) and (3)(b) state that any amount received from the settlement of a personal injury claim shall be treated as income.

## IV. STANDARD OF REVIEW.

The applicable standard of review provides:

[T]he reviewing court shall set aside agency action ... found to be (A) arbitrary and capricious, an abuse of discre-

tion or otherwise not in accordance with law ....

Administrative Procedure Act, 5 U.S.C. § 706(2). This is a highly deferential standard, presuming agency action to be valid. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). When reviewing the propriety of defendants' interpretation of the lump-sum rule, I must reject the scheme only if I find that it lacks a reasonable basis. *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). I find no reasonable basis for such a regulation.

## V. OAR 461–04–105(3)(b) WHICH REQUIRES PERSONAL INJURY CLAIMS TO BE TREATED AS INCOME VIOLATES THE SSA.

■ I find that OAR 461–04–105(3)(b) violates the SSA by subjecting personal injury awards, which are resources, to the "lump-sum" rule which Congress intended to apply only to income. I base my finding on the following: (1) legislative history and agency interpretations, and (2) the common meaning of income.

There is no definition of "income" in either OBRA or the AFDC statute. In attempting to define "income" as used in section 602(a)(7) of the SSA, the court in *Turner v. Prod,* 707 F.2d 1109, 1114 (9th Cir.1983), *cert. granted,* — U.S. —, 104 S.Ct. 1412, 79 L.Ed.2d 739 (1984), stated that the definition of that term was ambiguous from the statute. I turn first to an examination of the legislative history.

### A. *Legislative History.*

The legislative history of section 602(a)(17) does not clearly define "income." The recommendations of the Senate Finance Committee state:

> *Count Lump-sum payments*—Under present law, *any payments that meet the definition of income* (*e.g.* retroactive social security benefits) are counted as income in the month of receipt and any of the payment that is not spent in that month is usually considered a resource in the months thereafter.
>
> The committee amendment would require that large payments, *together with other*

*income* remaining after the application of disregards, be considered available to meet ongoing needs in the AFDC program ...

S.REP. NO. 97–139, 97th Cong., 1st Sess. 436, *reprinted in* 1981 U.S.CODE CONG. & AD.NEWS 396, 435, 702 (emphasis added). The same report, at 505 (U.S.CODE CONG. & AD.NEWS at 771), states:

> The committee believes that lump-sum payments should be considered available to meet the ongoing needs of an AFDC family. The present treatment of such payments has the perverse effect of encouraging the family to spend such income as quickly as possible in order to retain AFDC eligibility. The committee amendment would require that such income received in a month be considered available as income in the month it is received and also in future months.

It is clear that the language of the statute and the legislative history show that Congress intended only that the "lump-sum" rule apply to "income."

I adopt the reasoning of the court in *Reed v. Lukhard,* 591 F.Supp. 1247 (W.D. Va.1984) at page 1255, that Congress's explicit reference to "payments that meet the definition of income" compels the conclusion that Congress thought there were lump-sum payments that were not income. The court in *Reed* found that defendant's interpretation of the lump-sum rule which included personal injury awards as income was unreasonable and invalid. *Id.* at 1257.

The then Secretary of the Department of Health and Human Services, Richard Schweiker, stated in House Subcommittee Hearings on this bill: "When a large amount of money is received as lump sum—for example, an inheritance—we will consider it as income available for support not only in the month it is received, but to meet future needs." *Spending Reduction Proposals: Hearings Before the Senate Committee on Finance,* 97th Cong., 1st Sess. 18 (March 17, 1981). Mr. Schweiker's statement that he would consider such a lump-sum payment as income indicates it would not, under the meaning of income as

understood at the time, actually be considered income. Because Congress did not amend the definition of income with the OBRA, I must conclude that it did not intend to alter this definition.

In giving examples of lump-sum payments included in the amendment, Congress consistently used the example of retroactive social security benefits. These benefits differ from personal injury awards in that the benefits are merely an accumulation of payments which would be income if the payments were received on a monthly basis instead of in a lump-sum. Personal injury awards are not an accumulation of periodic payments which would be income otherwise; they are replacements for lost resources. I conclude that Congress did not intend to include lump-sum payments of this type in its definition of lump-sum payments.

B. *Prior Agency Interpretations.*

Congress can be presumed to be aware of the agency definition of income as developed by HHS and to have incorporated it into the "lump-sum" statute. *Merrill Lynch, Pierce, Fenner and Smith v. Curran,* 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841 n. 66, 72 L.Ed.2d 182 (1982). Congress itself never developed a definition of income particular to AFDC. Therefore, in interpreting income, I examine how HHS interpreted income prior to the enactment of OBRA.

In DHHS's "Brief on Behalf of the United States" as *amicus curiae* in *Lockhart v. Harden,* No. C74–390A (1974) at p. 18, the agency argued that lump-sum payments such as child support arrearages must be treated as income. The agency contrasted this treatment to the payments of an award of damages which would not be treated as income in 1974. This position indicates that HHS did not consider payment of an award of damages as income.

In a settlement arising from the case of *Underwood v. Harris,* No. 76–749 (D.D.C., filed March 22, 1976), an HEW instruction told the states that refund checks were to be treated as resources, not as income, for AFDC purposes. Program Instruction SSA–AT–80–3 (OFA), Feb. 4, 1980. These checks were reimbursements for unauthorized tax and utility cost increases. The checks were, according to agency policy, an amount which the family should not have been deprived of in the first place and, therefore, should not be treated as income. Personal injury awards are also reimbursement for items which the recipients should not have been deprived of and are not income.

DHHS continues to recognize that payments which do not represent an increase in value are not income. In interpreting whether money from the sale of a resource was exempt under the lump-sum rule, HHS stated:

[T]he change from a non-liquid asset, *e.g.,* a bicycle valued at $50 to cash of $50 does not change the total value of the assets held and such resource would be exempt if the allowable statutory amount were not exceeded.

47 Fed.Reg. 5657 (1982).

In *Taggart v. Perales,* CV 83–159–T (W.D.N.Y. Settlement filed Apr. 13, 1984), the court adopted a consent decree which found that settlement of a worker's compensation claim was not to be treated as income. The decree was based in part on the Secretary's statement that if a worker's compensation payment is actually a settlement for the loss of an individual's body or body part, the payment would be a resource. I find that personal injury awards are payment for the loss of a body part. Therefore, under the Secretary's own interpretation, these payments should be considered resources. DHHS's definition of the term income both before and after OBRA was enacted show that the agency never interpreted personal injury damage awards as income. I find that Congress was aware of these definitions when enacting OBRA and intended to define income in the OBRA as the agency had defined it.

C. *Congressional Purpose.*

■ A statute should be interpreted in light of the purpose Congress sought to serve by its enactment. *Chapman v. Houston Welfare Rights Organization,*

441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979). The present case involves two differing Congressional purposes. The purpose of the OBRA was to restrain federal spending. S.REP. NO. 97–139, 97th Cong., 1st Sess. 2–3, *reprinted in* 1981 U.S.CODE CONG. & AD.NEWS 396, 397–8. In interpreting the OBRA as it relates to the definition of earned income under AFDC, the court in *James v. O'Bannon*, 715 F.2d 794, 801 (3d Cir.1983), examined the purpose of OBRA and AFDC. The court stated that the purpose of the OBRA amendments is to reduce or eliminate welfare benefits for those considered by Congress to be less needy than those completely without resources. *Id.* at 808–09. The purpose of the AFDC program is to provide financial assistance to needy dependent children and the parents or relatives who live with and care for them. *Id.* The court in *Turner v. Prod, supra* at 1121, noted that the Congress which enacted OBRA left intact the statutory purposes of the AFDC statute. The court noted that it was incumbent for a court to accommodate the purposes of both statutes. I find that both the purpose of reducing or eliminating welfare benefits in the long run and the purpose of helping parents attain capability for self-support is achieved if personal injury awards are considered resources and the recipients are allowed to use these awards to attain a measure of economic independence. This interpretation of "income" is consistent with the purposes of both statutes.

D. *The Common Meaning Of Income.*

When Congress uses terms that have a settled, established meaning, a court must infer, unless the statute otherwise dictates, that Congress meant to incorporate that established meaning into the statute. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The dictionary definition is a logical starting point for determining the common established meaning of "income."

> Income—the amount of money or its equivalent received during a period of time in exchange for labor or services, from the sale of goods or property, or as profits from financial investments.

AMERICAN HERITAGE DICTIONARY 665 (new college ed. 1976). BLACK'S LAW DICTIONARY 687 (5th ed. 1979), defines income as:

> [T]he return in money from one's business, labor, or capital invested; gains, profits, salary, wages, etc. ... The true increase in amount of wealth which comes to a person during a stated period of time.

These common definitions of income all include the concept of gain. *See Reed v. Lukhard*, 591 F.Supp. 1247, 1256 (W.D. Va.1984).

Plaintiff LaMadrid's award was used to satisfy the Adult and Family Services lien and to pay attorney's fees. She used the remainder of the money to replace items lost in the fire. She has no measurable gain from receipt of this award.

Plaintiff Viskov also used the bulk of her personal injury settlement to satisfy the Adult and Family Services lien and her attorney's fees and medical bills. She also has no measurable gain from receipt of this settlement.

A personal injury award does not increase the measurable worth of the individual receiving the award. Defendants recognize that an award for property damage is an award to replace something lost, like a car or a stove. A personal injury award likewise compensates a person for loss of a resource, whether it be a lost body part or loss of the ability to function in a certain manner. Compensation for personal injuries functions to restore the recipient to the status she or he enjoyed prior to the injury. A personal injury award merely serves to make the person "whole" or to restore what was lost by the injury. There is not the measurable gain which is an essential part of the common definition of "income."

While no amount of money can actually replace a lost body part, the concept of damages has always been viewed as a way to make the injured party whole. *See Kassman v. American University*, 546

F.2d 1029, 1033 (D.C.Cir.1976). Compensation for injury to, or loss of a body part involves not only the replacement expense of making the person whole by compensating for the actual loss of a body part or function but making the person whole while attempting to teach the person new functional and vocational skills. These personal injury awards also do not mean a measurable gain to the recipient because of the extra expenses incurred in paying medical bills.[1]

E. *Other Statutory Interpretations Of Income.*

The Supreme Court has defined income as "the gain derived from capital, from labor or from both combined" for purposes of the sixteenth amendment. *Eisner v. Macomber*, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1920). The Internal Revenue Code (IRC) provides that gross income does not include the amount of any damages received on account of personal injuries or sickness. 26 U.S.C. § 104. In *Commissioner of Internal Revenue v. Glenshaw*, 348 U.S. 426, 431, 75 S.Ct. 473, 477 n. 8, 99 L.Ed. 483 n. 8 (1955), the Court noted that under the IRC, personal injury recoveries are non-taxable on the theory that they correspond to a return of capital. The Court stated that damages for personal injury are compensatory only. *Id.*

The court in *Reed, supra* at 1257, concluded that the settled meaning of "income" as expressed by the Supreme Court and in common usage has not been altered by the AFDC statute. The *Reed* court found that defining personal injury awards as income was totally irrational and in conflict with the statutory scheme of Congress. The court stated that there was no reason to apply a different meaning to "income" under the AFDC statute than under the IRC. *Id.*

In *Betson v. Cohen*, 587 F.Supp. 121, 126–27 (E.D.La.1983), the court based its decision that personal injury awards could be treated as income on the specific exemption from gross income in the IRC for personal injury awards. The AFDC stat-

ute does not contain such an exemption. However, as the *Reed* court noted, this analysis is inconsistent with both the Supreme Court definition of income and the *Glenshaw* determination that damages are compensatory. Congress can be presumed to be aware of interpretations of "income" by the Court and of the common meaning of the word. *Perrin, supra.* If Congress had intended to include personal injury awards in the definition of income, it would have specifically defined income differently in the AFDC statute than in the IRC. Because Congress made no special definition of "income" under the AFDC statute, I find that it intended to use the commonly used definition which would exclude personal injury awards.

The parties have recently submitted copies of DHHS's proposed regulations entitled "Counting Windfalls as Income." 49 Fed.Reg. 45,561 *et seq.* The proposed regulation states, in part:

> When the AFDC assistance unit's income, after applying applicable disregards, exceeds the state need standard for the family because of receipt of nonrecurring lump sum income (*including for AFDC, Title II and other retroactive monthly benefits and payments in the nature of windfall, e.g., inheritances or lottery winnings ...*)

(Emphasis added.) The only difference between the proposed regulation and the regulation previously discussed in this opinion, 45 C.F.R. 233.20(a)(3)(ii)(F), is the addition of the underlined material. In essence, the new, proposed regulation defines nonrecurring lump-sum income as a "windfall."

In its discussion of the proposed regulation, DHHS defines a windfall as a sum that is not earned, does not occur on a regular basis, and does not represent any accumulation of monthly income received in a single sum. Examples of a windfall include inheritance, lottery winnings and income tax refund as a windfall. Proposed regulation 45 C.F.R. § 233.20(a)(3)(iv)(E) re-

---

**1.** I note that one of the harsh effects of the present rule is that when recipients are denied ADC benefits, they not only lose the benefits, but medical coverage as well.

quires that most tax refunds be treated as resources.

DHHS's discussion relies on the agency's interpretation of the legislative history of OBRA. Reference is made to the Senate Finance Committee Report which I discussed earlier. *See supra* at p. 1455. The agency interprets this report to mean that windfall payments should be considered lump-sum income.

This interpretation supports my previous conclusion that the definition of lump-sum payment does not include personal injury awards. Personal injury awards are not income. Redefining income to include "windfalls" does not change this. The plain meaning of "windfall" is "an unexpected or sudden gain or advantage." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2619 (1976). Personal injury awards do not represent a gain in wealth.

## VI. EQUAL PROTECTION CLAIM.

The equal protection clause of the fourteenth amendment requires that any classification resulting in different treatment between two similarly situated groups must be rationally related to a legitimate state interest. *U.S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973).

OAR 461-04-105(3) and (3)(b) require any amount received from the settlement of a personal injury claim to be treated as income. However, under OAR 461-04-260 property damage awards spent to replace property are not treated as income.

■ If there is a difference in treatment and it involves denial of all aid rather than allocation of amounts of aid, courts will more closely examine the rationality of the underlying classifications. *Ranschburg v. Toan*, 540 F.Supp. 745, 748 (W.D.Mo.), *aff'd*, 709 F.2d 1207, 1209 (8th Cir.1982). If the relationship between the classification and the attainment of a legitimate governmental interest is found to be irrational, the challenged classification must fail. *Id.*

The purposes of the statutes under which the lump-sum rule was enacted are to help reduce federal spending (OBRA) and to help parents attain or retain capability for maximum self-support (AFDC). These are legitimate state interests. However, I find that defining personal injury awards as income and property awards as resources is not rationally related to the purposes of the statutes. As I stated above, both personal injury awards and property awards are given as reimbursement for loss. There can be no rational basis for defining one as income and the other as resources.

■ Under the Oregon defendants' policy, whenever the cost of replacing property is less than the settlement, the remaining settlement money may be accumulated up to the allowable resource limit. However, even if these reimbursement expenses were treated as resources, any money received as a personal injury settlement which is not needed to make a person whole or is not used for personal injury expenses is treated as income. *See Treatment of Lump-Sum Income*, OAR 461-04-512 (10)(b). These distinctions have no rational basis. I find that the defendants' policy of treating personal injury awards and property damage awards differently is irrational and violates the equal protection clause.

## VII. EQUITABLE TREATMENT REGULATION.

Section 233.10(a)(1) of 45 C.F.R. states, in part, that a state must not exclude individuals or groups on an arbitrary or unreasonable basis and must not treat individuals inequitably. Because I have found the regulation in question, OAR 461-04-105(3) and (3)(b), violates federal statutory law and the equal protection clause by treating persons similarly situated differently with no rational basis, I find that it also violates 45 C.F.R. § 23310(a)(1).

## CONCLUSION

In conclusion, I find that Oregon defendants' regulation OAR 461-04-105(3) and (3)(b) violates the SSA by including personal injury awards in the definition of income. I further find that defendants' policy of defining personal injury awards as income and property damage awards as resources

violates the equal protection clause of the fourteenth amendment to the United States Constitution and 45 C.F.R. § 233.10(a)(1). Plaintiffs' motion for a permanent injunction and declaratory relief is granted.