Eufemia LaMADRID, for herself and as next friend for her minor son, Joey LaMadrid; Debbie Viskov, Jeremy Gerber, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

v.

Leo HEGSTROM, individually and in his official capacity as Director, Department of Human Resources of the State of Oregon; and Keith Putnam, individually and in his official capacity as Administrator, Adult and Family Services Division of the State of Oregon, Defendants,

and

Margaret Heckler, individually and in her official capacity as Secretary of United States Department of Health & Human Services, Defendants-Appellants.

Shirley STREAHL, et al., Plaintiffs-Appellees,

v.

Leo HEGSTROM, et al., Defendant,

and

Margaret Heckler, Secretary of the U.S. Department of Health & Human Services, Defendant-Appellant.

Carole C. WHITE, Mary Halverson, and Irma Diaz, on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,

v.

Karen RAHM, Secretary, Department of Social & Health Services, Defendant-Appellant.

Nos. 85–3704, 85–3719, 85–4420, 85–4426 and 85–3975.

United States Court of Appeals, Ninth Circuit.

---

Argued Nov. 6, 1986.

Submission Deferred Nov. 6, 1986.

Resubmitted June 12, 1987.

Decided Oct. 26, 1987.

Richard D. Wasserman, Portland, Or., James R. Watt, Olympia, Wash., P.K. Abraham and Evelyn McChesney, Seattle, Wash., for defendants-appellants.

Lorey H. Freeman and Ira R. Zarov, Portland, Or., Norman R. McNulty, Jr. and Kenneth Isserlis, Spokane, Wash., for plaintiffs-appellees.

Lorenn Walker, Honolulu, Hawaii, for amicus.

Before ANDERSON, HUG and CANBY, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

This consolidated appeal involves the interpretation of what has been phrased the "lump sum rule" when determining the eligibility of families seeking Aid to Families with Dependent Children (AFDC) benefits. In all three cases, the district courts treated the monies received by appellees as resources rather than income for purposes of determining eligibility for AFDC benefits. On appeal, appellants argue that the lump sum rule requires that personal injury and compensatory awards and life insurance proceeds be treated as income for AFDC. After oral argument, we agreed to defer submission of our decision pending the United States Supreme Court decision in *Lukhard v. Reed*, 481 U.S. ——, 107 S.Ct. 1807, 95 L.Ed.2d 328 (1987). We affirm in part and reverse in part.

## I. BACKGROUND

The AFDC program is a joint federal-state program in which participating states that provide financial assistance to families with needy dependent children are partially reimbursed by the federal government. 42 U.S.C. §§ 601–615 (West Supp.1987). Although the states are largely free to determine the appropriate standard of need, they must submit to the Department of Health & Human Services (HHS), the administering federal agency, a plan consistent with federal law. Federal law requires states to consider a family's "income and resources" when determining whether or not the family is eligible for benefits, and prohibits them from providing AFDC benefits for any month in which either income or resources exceed state-prescribed limits. 42 U.S.C. §§ 602(a)(7)(A) and (B), 602(a)(17), 602(a)(18).

Because income eligibility and resource eligibility are separately computed, whether and for how long a family that acquires a sum of money is rendered ineligible for AFDC benefits may depend on whether the sum is classified as income or as a resource. Prior to 1981, however, the importance of the classification was minimized by the HHS requirement that any income received in a given month should be treated as a resource in following months. Thus, a family that received an amount of income that exceeded the State's income limit would be automatically ineligible for one month; whether or not the family remained ineligible in subsequent months would depend on whether enough of the money was spent to bring the amount of the family's nonexempt resources down below the exclusion level. The Secretary of HHS became concerned that this provided an incentive for AFDC recipients who acquired large amounts of income to spend it as rapidly as possible in order to regain eligibility by reducing their resources to a level beneath the State's resource limit. To solve this problem, the Secretary proposed the "lump sum rule."

With the passage of the Omnibus Budget Reconciliation Act of 1981 (OBRA), 95 Stat. 845, as amended, 42 U.S.C. § 602(a)(17) (1982), Congress adopted the "lump sum rule" because it shared the same concern expressed by the Secretary. Under this rule, AFDC recipients who receive an amount of income that exceeds the State's standard of need are ineligible for as many months as that income would last if the recipients spent an amount equal to the State's standard of need each month.

Thus, if the State's standard of need is $200.00 per month, a $10,000.00 payment to a recipient would render the recipient ineligible for 50 months. *See* 45 C.F.R. § 233.-20(a)(3)(ii)(F) (1986). Application of the lump sum rule can thus disqualify a family for a considerably longer period of time than before because the ineligibility operates without regard to how quickly a family spends the lump sum.

Because the lump sum rule applies by its terms only to income, the distinction between income and resources took on new importance. If a given sum of money were treated as a resource, the recipient would be ineligible only until enough was spent to bring his resources down to the State's resource limit. If the sum were treated as income, however, no matter how much was spent, the recipient would remain ineligible for the statutory period.

We have consolidated three cases presenting the questions of whether various lump sums paid to appellees are "income" or "resources" for purposes of AFDC. *LaMadrid v. Hegstrom* is a challenge to Oregon's implementation of the AFDC program in which personal injury awards and settlements are treated as income; *Streahl v. Hegstrom* challenges Oregon's treatment of life insurance proceeds as income; and *White v. Rahm* challenges Washington's implementation of the program in which personal injury settlements, workers' compensation, and compensation received under the Washington Victims of Crime Compensation Act are treated as income.

## II. *LaMADRID v. HEGSTROM*

■ In *Reed*, the United States Supreme Court reviewed a decision from the Fourth Circuit Court of Appeals holding that a Virginia social services agency could not lawfully treat personal injury awards as income when determining the eligibility of families seeking AFDC benefits. *See Reed v. Health & Human Services*, 774 F.2d 1270 (4th Cir.1985). Certiorari was granted to resolve the conflict between the Fourth Circuit and the Seventh Circuit which had reached the opposite conclusion in *Watkins v. Blinzinger*, 789 F.2d 474 (7th Cir.1986).

The Supreme Court, in a 5-4 decision, held that the state's policy of treating personal injury awards as income is consistent with the AFDC statute and implementing regulations. *Reed*, 481 U.S. at ——, 107 S.Ct. at 1816, 95 L.Ed.2d at 341. Based on this holding, the parties in *LaMadrid* submit that all issues raised by them have been disposed of, with the exception of their equal protection claim.

In *LaMadrid*, 599 F.Supp. 1450, the district court ruled that Oregon's treatment of personal injury awards and property damage awards differently under the lump sum rule violates the Federal Equal Protection Clause and the "equitable treatment" regulation which provides that:

[The state plan must] specify the groups of individuals, based on reasonable classifications, that will be included in the program, and all the conditions of eligibility that must be met by the individuals in the groups. The groups selected for inclusion in the plan and the eligibility conditions imposed must not exclude individuals or groups on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in the light of the provisions and purposes of the public assistance titles of the Social Security Act....

45 C.F.R. § 233.10(a)(1) (1986).

Appellees assert that the *Reed* decision on equitable treatment was limited to the interpretation of a regulation, and was decided entirely on the basis of deference to the agency and the agency's ability to interpret its own regulations. Appellees' Supplemental Brief at 2, *LaMadrid* (85-3719). This is not true. We find that this decision was not entirely based on deference. After determining that personal injury awards can reasonably be treated as income, the Supreme Court ruled that Virginia's policy of treating personal injury awards as income but property damages as resources was also reasonable. The Court then noted that the former could be viewed as increasing their recipients' well-being, and the latter as merely restoring re-

sources to previous levels. This distinction, coupled with the substantial deference owed to the Secretary's conclusion that Virginia's regulations are consistent with HHS's regulations, *see, e.g., Lyng v. Payne,* 476 U.S. 926, ——, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921, 934 (1986), *reh'g denied,* —— U.S. ——, 107 S.Ct. 11, 97 L.Ed.2d 766, led the Court to reject respondent's inequitable treatment argument. *Reed,* 481 U.S. at ——, 107 S.Ct. at 1815, 95 L.Ed.2d at 340. Based upon this reasoning, we find that Oregon's policy of treating personal injury awards as income and property damage awards as resources is reasonable and does not violate the equitable treatment provision.

We must now examine how *Reed*'s interpretation of the equitable treatment regulation affects appellees' equal protection claim. Because neither a fundamental right nor a suspect classification is involved, the question under the equal protection clause is whether the state has a rational basis for its action. *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1971). Appellees argue that since the *Reed* decision on equitable treatment was limited to a regulatory interpretation and was decided entirely on the basis of deference to the agency, their constitutional claim was not addressed in *Reed.* Consequently, *Reed* is not conclusive.

While it is true that the *Reed* equitable treatment decision was based on a regulatory interpretation, it was not decided entirely on deference to the Secretary. As stated above, the deference was coupled with the Court's recognition that a reasonable distinction existed between treating personal injury awards as income and treating property damage awards as resources. As the Court noted, personal injury awards can be viewed as increasing their recipients' well-being, and property damage awards as merely restoring resources to previous levels. *Reed,* 481 U.S. at ——, 107 S.Ct. at 1815, 95 L.Ed.2d at 340. A rational basis, therefore, can be said to exist for this distinction. Furthermore, this distinction between personal injury and property damage awards is rationally related to the purpose of the AFDC program and the OBRA amendment. This disparity in treatment, therefore, withstands constitutional scrutiny. We find that there is no equal protection or equitable treatment violation and therefore reverse the judgment of the district court.

### III.  *STREAHL v. HEGSTROM*

■ This case involves the validity of Oregon's treatment of life insurance proceeds as income under the AFDC program. The district court ruled that where the deceased had a duty while alive to provide support to the beneficiaries, life insurance proceeds must be treated as a resource.

Although the Supreme Court's holding in *Lukhard v. Reed* involved personal injury awards, we find that its reasoning must also be applied in this situation. The plurality, in its search for the meaning of "income," noted that general and legal sources commonly define "income" to mean " 'any money that comes in,' without regard to any related expenses incurred and without any requirement that the transactions producing the money result in a net gain." *Reed,* 481 U.S. at ——, 107 S.Ct. at 1812, 95 L.Ed.2d at 336. In rejecting respondent's definition of income (as gain), the plurality referred to the significance of *Heckler v. Turner,* 470 U.S. 184, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985) where the Court had previously indicated that the portion of an employee's salary that is allocated to work-related expenses, while clearly not a gain in the sense used by respondents is, however, properly treated as "income" under the AFDC statute. 470 U.S. at 202, 105 S.Ct. at 1148, 84 L.Ed.2d at 151. The plurality used this to demonstrate that the AFDC statute itself contradicts the theory that payments that are not "gain" to their recipients cannot be described as "income." Thus, the plurality found Virginia's definition of income to be consistent with a perfectly natural use of the term. Following this logic, we conclude that insurance proceeds can reasonably be treated as income under the AFDC statute.

In addition, the AFDC statutes take into account only real and personal property as resources. *Reed*, 481 U.S. at —, 107 S.Ct. at 1815, 95 L.Ed.2d at 339. This fact permitted "(if it d[id] not indeed require)" the *Reed* court to reach the conclusion that "personal injury awards are compensation for diminution of well-being of a kind not covered by the AFDC statute, except to the extent they compensate for lost wages (to which extent they clearly are gain ...) or for economic expenses caused by the injury...." *Id.* Since personal injury awards are almost entirely a gain in well-being, as measured under the AFDC statute, they can reasonably be treated as income. *Id.* Life insurance proceeds are similarly a gain in well-being and, therefore, qualify as income for purposes of the AFDC. We reverse the district court's judgment that Oregon's policy of treating life insurance proceeds as income for AFDC purposes is invalid.

## IV. *WHITE v. RAHM*

■ After the passage of OBRA, the Department of Social and Health Services (DSHS) for the State of Washington applied the AFDC lump sum rule to compensatory awards and treated them like income. This case involves the validity of Washington's treatment of personal injury awards, workers' disability compensation, and victims of crime compensation awards as income under the AFDC program. The district court ruled that these awards did not represent gain or increase wealth, and therefore, were not income. The district court enjoined DSHS from applying the lump sum rule to these compensatory awards and required that they be treated as resources. Following the district court decision, the state legislature amended the definition of income in the public assistance statutes to require that where federal law provides the state the option to treat lump sum awards as income or resources, the department shall treat such property as a resource. RCW 74.04.005(11)(b) (1985).

But since this time there have been two new developments. First, the Supreme Court decision in *Lukhard v. Reed*, and second, a 1986 amendment to 45 C.F.R.

§ 233.20(a)(3)(ii)(F) which requires states to treat "windfall" payments, such as personal injury and workers' compensation awards, as lump sum income for AFDC purposes.

Following the Supreme Court's interpretation of "income" in *Reed*, personal injury awards can be treated as income. In applying this definition of income, workers' disability compensation and victims of crime compensation awards, which represent types of compensation for personal injury, can be defined as "money that comes in" regardless of any expenses incurred and without a showing that the transactions producing the money resulted in a net gain. Thus these awards qualify as income. This fact, coupled with the fact that the new 1986 amendment promulgated by the Secretary of HHS requires States to treat these awards as lump sum income, would seem to indicate that these awards must be considered as income for AFDC purposes.

Appellees do not agree with this analysis. They argue that the *Reed* decision is not dispositive of their case. They point out that in *Reed*, the Court observed that although the Secretary had promulgated a new regulation requiring personal injury awards to be treated as income, the regulation was not being challenged. Furthermore, the Court specifically upheld Virginia's practice of classifying personal injury awards as income without reference to the new regulation. 481 U.S. at —, n. 5, 107 S.Ct. at 1814, n. 5, 1816, 95 L.Ed.2d at 338 n. 5, 341. Therefore, the decision in *Reed* did not address the validity of the 1986 amendment to 45 C.F.R. 233.20(a)(3)(ii)(F). The parties to the *White* appeal wish to distinguish *Reed* because they are challenging the validity of the new regulation.

The issue raised by appellees is now before this court. In order to declare a regulation invalid, we must find that the Secretary exceeded his statutory authority or that the regulation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Yuckert v. Heckler*, 774 F.2d 1365, 1369 (9th Cir.1985), *rev'd on other grounds sub nom. Bowen v. Yuckert*, 482 U.S. —, 107 S.Ct. 2287,

96 L.Ed.2d 119 (1987). Appellees contend that the new regulation is invalid for two reasons. One, that it improperly restricts the state option to treat personal injury and other compensatory awards as income or as a resource, and two, that it was not promulgated in accordance with the Administrative Procedure Act (APA). 5 U.S.C. § 551 et seq. (1982). We deal with these points in reverse order.

Under the APA, general notice of a proposed rulemaking must be published in the Federal Register and must include "either the terms or substance of the proposed rule or a description of the subject and issues involved." 5 U.S.C. § 553(b)(3). The new regulation was based on a proposed regulation for which public notice was given on November 16, 1984. 49 Fed. Reg. 45558–70 (1984). Appellees contend that the new rule is invalid since the final regulation is so different from the proposed regulation that inadequate notice was given. A notice of rulemaking is sufficient if it "provides a description of the subjects and issues involved." *California Citizens Band Association v. United States*, 375 F.2d 43, 49 (9th Cir.1967), *cert. denied*, 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967). The main concern is to ensure that the final rule is sufficiently related to the proposed rule so that the challenging party had notice of the agency's contemplated action. *See, e.g., Central Lincoln Peoples' Utility v. Johnson*, 735 F.2d 1101, 1118 (9th Cir. 1984).

In comparing the two versions of the regulation, we find that the proposed rule provided that the receipt of nonrecurring lump sum income (including ... payments in the nature of windfall, e.g., inheritances or lottery winnings ...) will be considered as income for AFDC purposes. 49 Fed. Reg. 45,568. Comments by HHS defined a windfall as a sum of money that is not earned, does not occur on a regular basis, and does not represent accumulated monthly income received in a single sum. A windfall might come from an inheritance, lottery winnings, or an income tax refund, but not title II Social Security or VA benefits. Thus nonrecurring lump sum income

included unearned sums of money. 49 Fed. Reg. 45,561.

The final regulation expanded the definition of "nonrecurring lump sum income" to include "nonrecurring earned or unearned lump sum income." This is a logical outgrowth of the proposed regulation and comment. The final regulation also expanded the definition of windfall to include personal injury awards. 45 C.F.R. § 233.-20(a)(3)(ii)(F) (1986). According to appellees, this "enormous expansion of the word 'windfall' is a blatant twisting of the English language." Appellees' Supplemental Brief at 12, *White* (No. 85–3975). They further argue that "while such a recovery might arguably be called 'income' (*see Lukhard* ...), it would stretch the word beyond *any* accepted meaning to call it a windfall." *Id.* at 13, referring to *Barnes v. Cohen*, 749 F.2d 1009, 1017 (3rd Cir.1984). *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985) (emphasis in original) (holding that under Pennsylvania law a personal injury award does not constitute a windfall).

After considering appellees' arguments, we are nonetheless persuaded that personal injury awards may be included as examples of "windfalls" for AFDC purposes. Personal injury awards, as defined by *Reed*, can be viewed as increasing their recipients' pecuniary well-being. 481 U.S. at ——, 107 S.Ct. at 1815, 95 L.Ed.2d at 340. This is consistent with the term "windfall." The changes in the final regulation are in character with the original scheme and are a logical outgrowth of the notice and comment already given. *See South Terminal Corp. v. EPA*, 504 F.2d 646, 658 (1st Cir.1974). We find that the description of the subjects and issues involved in the proposed rule are sufficient to put the challenging parties on notice of the HHS's contemplated action.

We also find the Secretary's decision to be legitimate. We rely on the established proposition that an agency's construction of its own regulations is entitled to substantial deference. *Reed*, 481 U.S. at ——, 107 S.Ct. at 1815, 95 L.Ed.2d 340. It is HHS's intent to treat all lump sum pay-

ments as income. The Secretary's decision that the new regulation is consistent with the AFDC statute and the OBRA amendment is entitled to deference. Moreover, the new regulation is not directly opposite to or an about-face of HHS's previous position as claimed by appellees. States have historically had the option to treat nonrecurring lump sum payments as either resources or income, *Reed*, 481 U.S. at ——, 107 S.Ct. at 1813, 95 L.Ed.2d at 338, thus a reasonable person would be on notice that these payments may be treated as income. The 1986 amendment is not inconsistent with prior agency policy and is not arbitrary or capricious. Therefore, it is entitled to substantial deference.

Appellees also argue that the new 1986 amendment is self-serving because HHS, as a party in litigation around the country, knew that the issue of whether personal injury awards constitute a windfall, income, or resource was a hotly-debated question. We find this argument unpersuasive. By passing the OBRA amendments, the intent of Congress was for lump sums to be treated as income. Personal injury awards can be properly treated as income under the lump sum rule. *See Reed*, 481 U.S. at ——, 107 S.Ct. at 1816, 95 L.Ed.2d at 341. Thus, there was a reasonable basis for the new regulation. We therefore find that the 1986 amendment to 45 C.F.R. 233.20(a)(3)(ii)(F) is not self-serving.

Since we find that the new regulation was properly promulgated and is not arbitrary, capricious, or otherwise not in accordance with the law, we hold that the 1986 amendment to 45 C.F.R. 233.-20(a)(3)(ii)(F) is valid. Based upon this finding and the Supreme Court decision in *Reed*, Washington's practice of treating compensatory awards as resources cannot be upheld.

█ Having upheld the validity of the 1986 amendment, we must now determine how it will affect this case. This can be accomplished best by looking at the time periods before and after the enactment of the 1986 amendment separately.

**A. The Period Prior to the Enactment of the 1986 Amendment (March 18, 1986)**

Prior to the enactment of the 1986 amendment, states had the option to consider nonrecurring lump sum payments as either unearned income or resources. After the implementation of the OBRA amendment, states continued to exercise this latitude. *See Reed*, 481 U.S. at ——, 107 S.Ct. at 1813, 95 L.Ed.2d at 338. Thus Washington could properly elect to treat personal injury awards and other compensatory awards as resources. Washington elected to do this as of July 28, 1985 with the passage of RCW 74.04.005(11)(b) (1985). It then follows that from July 28, 1985 until March 18, 1986 (the date HHS's new regulation went into effect), Washington was permitted to treat nonrecurring lump sum compensatory awards as resources. As a result, the district court's judgment requiring lump sum compensatory awards to be treated as resources for this time period will be affirmed.

Appellees further contend that the district court holding should also be affirmed as it pertains to the time period prior to July 28, 1985. They cite Washington law which provides:

> Statutes normally will be construed to operate prospectively only, unless a contrary intent appears.... Where, however, a statute is remedial and its remedial purpose is furthered by retroactive application, the presumption favoring prospective application is reversed.

*Haddenham v. State*, 87 Wash.2d 145, 148, 550 P.2d 9 (1976).

The statute in question deals with eligibility for public assistance benefits. Because the Social Security Act is remedial and is construed liberally, *see Doran v. Schweiker*, 681 F.2d 605, 607 (9th Cir.1982), appellees argue that the 1986 amendment is remedial and should therefore be applied retroactively.

At the time prior to the enactment of the 1985 Washington statute, states were free to treat lump sum awards as income. Because this practice has been upheld in *Reed*, we conclude that it is inappropriate

to apply the Washington statute retroactively. We therefore reverse the judgment of the district court as to the time period prior to July 28, 1985.

## B. The Period After the Enactment of the 1986 Amendment

Since we have held that the 1986 amendment to 45 C.F.R. 233.20(a)(3)(ii)(F) is valid, we hold that states are required to treat nonrecurring earned or unearned lump sum income, including "windfall" payments such as personal injury and worker compensation awards, as income for AFDC purposes. The decision of the district court as to the time period after March 18, 1986 is reversed.

## V. CONCLUSION

States are still largely free to determine the appropriate standard of need and the level of assistance they are willing to provide under their AFDC programs. They must now, however, administer their plans in accordance with the definition of "income" provided by 45 C.F.R. 233.-20(a)(3)(ii)(F) (1986) and by the decision in *Lukhard v. Reed.*

The district court decision in *LaMadrid v. Hegstrom* is reversed.

The district court decision in *Streahl v. Hegstrom* is reversed.

The district court decision in *White v. Rahm* is affirmed in part and reversed in part.

AFFIRMED in part and REVERSED in part.

All parties in each of these appeals shall bear their own costs on appeal.