**Cynthia MONT, on her own behalf and on behalf of all others similarly situated, and Judy–Ann Church, Plaintiffs–Appellants,**

v.

**Stephen HEINTZ, Commissioner, Connecticut Department of Income Maintenance, in his official capacity, Defendant–Appellee.**

**No. 975, Docket 88–7016.**

United States Court of Appeals, Second Circuit.

Argued April 18, 1988.

Decided June 1, 1988.

---

Joanne Gibau, New Haven, Conn. (New Haven Legal Assistance Ass'n, Inc., Shel-

ley White, of counsel), for plaintiffs-appellants.

Hugh Barber, Hartford, Conn., Asst. Atty. Gen. for the State of Conn. (Joseph I. Lieberman, Atty. Gen. for the State of Conn., of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, MESKILL and PIERCE, Circuit Judges.

FEINBERG, Chief Judge:

This is an appeal from a judgment of the United States District Court for the District of Connecticut, Ellen Bree Burns, J., dismissing for lack of subject matter jurisdiction appellants' claim under 42 U.S.C. § 1983 against the Commissioner, Connecticut Department of Income Maintenance. Appellants claim that the Commissioner has violated federal law, specifically, 42 U.S.C. § 602(a)(17), by failing to use the state's true standard of need in calculating the period of ineligibility for Aid to Families with Dependent Children (AFDC) applicants and recipients who receive lump sum payments. The district court ruled that appellants' claim is barred by the eleventh amendment under the holding of *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed. 2d 67 (1984) ("Pennhurst II"). We disagree, and, for the reasons given below, reverse the judgment of the district court and remand the case for further proceedings.

## I. Statutory Framework

As we have previously noted, the tangle of federal and state statutes and regulations in the welfare area now rivals the tax area as a marvel of complexity. *McGraw v. Berger*, 537 F.2d 719, 720 (2d Cir.1976), cert. denied, 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). Therefore, before turning to the facts of this case, it is useful to summarize the statutory framework governing AFDC benefits.

Title IV–A of the Social Security Act, 42 U.S.C. § 601 et seq., establishes the AFDC program, which is designed to encourage "the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services ... to needy dependent children and the parents or relatives with whom they are living...." 42 U.S.C. § 601. The "program is based on a scheme of cooperative federalism." *King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). States are not required to participate in the AFDC program, but those that do must administer their plans in conformity with applicable federal law, *Rosado v. Wyman*, 397 U.S. 397, 408, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970), and must submit an AFDC plan meeting the requirements of 42 U.S.C. § 602 for the approval of the Secretary of Health and Human Services (HHS). A state's expenditures under an approved plan are partially reimbursed according to the formula set forth in 42 U.S.C. § 603.

Two basic factors enter into the determination of what AFDC benefits will be paid, and both are established by a state: the standard of need and the level of benefits. 45 C.F.R. § 233.20(a)(2). "On both scores Congress has always left to the States a great deal of discretion." *Rosado*, 397 U.S. at 408, 90 S.Ct. at 1215. The standard of need measures who is eligible for public assistance. It is "a dollar figure set by each State reflecting the amount deemed necessary to provide for essential needs, such as food, clothing, and shelter." *Quern v. Mandley*, 436 U.S. 725, 737, 98 S.Ct. 2068, 2075, 56 L.Ed.2d 658 (1978). See also *Shea v. Vialpando*, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974) (the standard of need "is the amount deemed necessary by the State to maintain a hypothetical family at a subsistence level"). With the exception of the requirement adopted in 1968 that the standard of need be adjusted as of July 1, 1969 to reflect changes in the cost of living as of that date, see 42 U.S.C. § 602(a)(23), each state is free to set the standard of need at essentially any level it deems fit. *Mandley*, 436 U.S. at 738, 98 S.Ct. at 2076. There is a "conspicuous lack of guidance from Congress" as to how the standard of need should be formulated. *Largo v.*

*Sunn,* 835 F.2d 205, 208 (9th Cir.1987). However, federal regulations do provide that the state's AFDC plan must set forth its standard of need figures and an explanation of the method used by the state in determining need, 45 C.F.R. §§ 233.-20(a)(2)(i) and (iv), that the standard must be uniformly applied throughout the state, 45 C.F.R. § 233.20(a)(2)(iii), and that the state can include special-needs items in its standard, 45 C.F.R. § 233.20(a)(2)(v).

The level of benefits establishes how much assistance will actually be provided, and "is not necessarily a function of the standard of need." *Mandley,* 436 U.S. at 737, 98 S.Ct. at 2075. As the Court observed in *Rosado,* noting the potential discrepancy between a state's standard of need and the level of benefits actually paid:

> [federal law] leaves the States free to effect downward adjustments in the level of benefits paid ... accomplish[ing] within that framework the goal, however modest, of forcing a State to accept the political consequence of such a cutback and bringing to light the true extent to which actual assistance falls short of the minimum acceptable.

397 U.S. at 413, 90 S.Ct. at 1218. Thus, in the early 1970's Connecticut proposed to become a "ratable reduction" state (i.e., to pay less than its standard of need), but in response to litigation it agreed to continue the level of benefits at 100 percent of need. See *Johnson v. White,* 528 F.2d 1228, 1231 n. 2 (2d Cir.1975). See also *Rosado,* 397 U.S. at 408–09, 90 S.Ct. at 1215–16 (discussing various methods employed by states in setting the level of benefits).

The standard of need does place an upward limit, however, on the level of benefits a state may provide. A state must consider a family's "income and resources" in determining whether it is needy, 42 U.S.C. § 602(a)(7)(A), and is prohibited from providing AFDC benefits for any month in which the family's income (with some adjustments) exceeds 185 percent of the standard of need, 42 U.S.C. § 602(a)(18), or its resources exceed state-prescribed limits (subject to a federal ceiling), 42 U.S.C. § 602(a)(7)(B). See generally *Lukhard v.*

*Reed,* —— U.S. ——, 107 S.Ct. 1807, 1810, 95 L.Ed.2d 328 (1987) (plurality opinion).

The requirement at issue in this case is known as the "lump sum rule" and was enacted as part of the Omnibus Budget Reconciliation Act of 1981, 95 Stat. 845, as amended, 42 U.S.C. § 602(a)(17). *LaMadrid v. Hegstrom,* 830 F.2d 1524, 1526 (9th Cir.1987). Under this rule, "AFDC recipients who receive an amount of income that exceeds the State's standard of need are rendered ineligible for as many months as that income would last if the recipients spent an amount equal to the State's standard of need each month." *Reed,* 107 S.Ct. at 1810. Thus, as explained in *LaMadrid,* 830 F.2d at 1527, if a state's standard of need is $200 per month, a $10,000 lump sum payment to a recipient would render the recipient ineligible for AFDC benefits for 50 months. See also 45 C.F.R. § 233.20(a)(3)(ii)(F).

## II. Background

Cynthia Mont commenced this action in January 1986 seeking declaratory and injunctive relief on behalf of herself and similarly situated applicants and recipients of benefits under the Connecticut AFDC program. Judy–Ann Church was subsequently added as an additional plaintiff. In the complaint, appellants allege that the Commissioner improperly calculates the period of ineligibility under 42 U.S.C. § 602(a)(17) and 45 C.F.R. § 233.20(a)(3)(ii)(F) by dividing lump sum payments by the state's payment level, rather than by the state's higher standard of need, causing unduly long periods of ineligibility. Appellants allege that under Connecticut law the standard of need is the figure computed annually by the Commissioner pursuant to Conn. Gen. Stat. § 17–2(a), and that the Commissioner has failed to use that figure in this context. The complaint also set forth related claims which were later voluntarily dismissed.

The district judge referred appellants' motion for class certification and the Commissioner's motion to dismiss to a magistrate, who issued a memorandum and recommended ruling in August 1986. The magistrate agreed that if the Commissioner

was using a level of payment figure as opposed to a standard of need figure to compute the period of ineligibility under 42 U.S.C. § 602(a)(17), he would be in violation of federal law. She concluded, however, that Conn. Gen. Stat. § 17–2(a) only requires the Commissioner to compute and report annually to the legislature the effects of inflation on the components of the standard of need (as opposed to actually setting a new standard of need), and that under *Pennhurst II*, the court could not consider whether the Commissioner had complied with the requirements of § 17–2(a). She also concluded that even if appellants' claim was based on Conn. Gen. Stat. § 17–2(b)—a provision she construed as requiring the legislature to increase the standard of need by a given percentage in specified years—it would be barred by the eleventh amendment, apparently on the theory that federal law does not incorporate the requirements of state law and that *Pennhurst II* prevents the court from requiring the Commissioner to comply with state law when employing a standard of need. The magistrate therefore recommended approval of appellee's motion to dismiss the claim now before us. The magistrate also recommended approval of appellants' motion for class certification with respect to other related claims still pending at the time, concluding that the action was not moot despite the fact that no named plaintiff was then ineligible for AFDC benefits.

The district court approved and adopted the magistrate's recommended ruling in September 1987. In ruling on objections to the magistrate's recommendation, the court noted that appellants were not claiming a violation of Conn. Gen. Stat. § 17–2(b)—appellants apparently having conceded that increases mandated by that subsection had in fact been made—and that therefore the magistrate's discussion of § 17–2(b) was not in issue. The court agreed, however, that appellants' claim under § 17–2(a) was barred by the eleventh amendment, stating that

> To the extent that plaintiff claims § 17–2(a) mandates that the commissioner update the standard of need applicable

to AFDC applicants and recipients to conform to his reported findings with respect to the components of the standard, she seeks an order of the court that the defendant comply with state law. This relief cannot be granted under the teaching of *Pennhurst.*

In a footnote, the court also questioned the merits of appellants' statutory argument, suggesting that the more persuasive interpretation of Conn. Gen. Stat. § 17–2(a) was that it merely creates a reporting requirement for the Commissioner and "that the data reported by the commissioner is provided for assistance to the legislature in enacting increases in the state's standard of need." However, the court did not rest its holding on this ground. The court agreed that the other claims still pending were not moot under the "capable of repetition yet evading review" doctrine. This appeal followed.

### III. Discussion

■ The question presented on appeal is a narrow one. It is whether appellants have stated a claim for prospective relief that seeks to secure compliance with federal law by a state official, which is not barred by the eleventh amendment, *Edelman v. Jordan*, 415 U.S. 651, 675–77, 94 S.Ct. 1347, 1361–63, 39 L.Ed.2d 662 (1974), as opposed to a claim that seeks solely to secure compliance with state law by a state official, which is barred by the eleventh amendment, *Pennhurst II*, 465 U.S. at 106, 104 S.Ct. at 911. As appellants' claim was dismissed for lack of subject matter jurisdiction, the underlying merits of the claim are not before us at this time.

On appeal, appellants stress the narrowness of their claim, arguing that the magistrate and the district court mischaracterized the nature, and impermissibly considered the merits, of the claim. Appellants point out that they do not contend that the Commissioner has failed to comply with the mandates of Conn. Gen. Stat. § 17–2(a), even though their argument was so characterized below. Instead, they claim that while the Commissioner has complied with the provisions of § 17–2(a) in

revising and updating the state's standard of need, he has violated federal law by failing to use this standard when making AFDC ineligibility determinations pursuant to 42 U.S.C. § 602(a)(17).

The Commissioner argues that there is no federal requirement that the state adopt a particular standard of need and therefore there is no basis in federal law to require the Commissioner to utilize any particular standard. He challenges appellants' contention that the federal statute incorporates by reference into federal law the requirements of state law pertaining to the state's standard of need and argues that the issues raised here are essentially of local concern—involving the complex interplay of state statutory and administrative schemes—and that the federal intervention sought is precisely the type that the eleventh amendment seeks to prevent.

■ We agree that Congress left much discretion to the states in establishing standard of need levels. We do not agree, however, as is implied by the Commissioner's argument, that once the state has established a standard of need it can ignore that standard in making determinations pursuant to 42 U.S.C. § 602(a)(17). As indicated above in our discussion of the statutory framework, federal law clearly requires that participating states establish a "standard of need." HHS regulations mandate that this standard be included in the state's AFDC plan along with an explanation of the method used in determining need. And, while there is little guidance as to how the standard is to be established, and thus admittedly great discretion is left to the state, it does not appear that the Commissioner could use different numbers as the state's standard of need whenever he chose to or simply pick numbers at random to constitute the state standard. Cf. *State of Minnesota v. Heckler*, 739 F.2d 370, 374 (8th Cir.1984) (the state's discretion in setting its standard of need is not absolute). It is up to the individual states to determine who is needy for the purposes of the AFDC program, see *Smith*, 392 U.S. at 318–19 n. 14, 88 S.Ct. at 2133–34 n. 14; federal law requires that

they do so and that the standard they adopt be applied uniformly when determining periods of ineligibility.

■ Moreover, a state cannot obscure what standard of need it applies. In *Rosado*, a case interpreting 42 U.S.C. § 602(a)(23), the provision mandating a one-time adjustment in the standard of need in 1969, the Supreme Court indicated that federal law requires a state to establish a clear standard of need. The Court noted that under § 602(a)(23) "a State may, after recomputing its standard of need, pare down payments to accommodate budgetary realities by reducing the percent of benefits paid or switching to a percent reduction system, *but it may not obscure the actual standard of need.*" 397 U.S. at 413, 90 S.Ct. at 1218 (emphasis added). Admittedly, the broad policy of § 602(a)(23) in requiring states to face up to the responsibilities of public assistance has weakened with the passage of time, as Congress has not required additional adjustments to the standard of need. Nevertheless, federal law still requires a state to establish a clear standard, and doing so has "practical and political consequences." Id. It affects eligibility for benefit payments, as under § 602(a)(17), and on a broader level requires the state to face up to the political responsibility of telling its citizens what constitutes "need" and what portion of that need it is willing to provide.

The authorities cited to us by the Commissioner in his eleventh amendment argument merely support the proposition that federal court jurisdiction consistent with the eleventh amendment is dependent upon "a specific conflict between a state plan or practice on the one hand and a federal mandate on the other." *Oberlander v. Perales*, 740 F.2d 116, 119 (2d Cir.1984). In *Oberlander*, relied on by appellee, there was no allegation of a conflict between the state Medicaid plan at issue there and federal law. We therefore dismissed the claim. In *Pennhurst II*, the Court refused to extend the power of the federal courts to afford prospective relief against state officials based solely on a violation of state law. Here, however, the allegation is that

the state practice violates federal law. Other circuits have agreed that the eleventh amendment does not bar analogous claims. See *Everett v. Schramm*, 772 F.2d 1114, 1119 (3d Cir.1985) (state officials violated Social Security Act by failing to use the state's actual standard of need in calculating AFDC eligibility); *Ibarra v. Texas Employment Commission*, 823 F.2d 873, 877 (5th Cir.1987) (Federal Unemployment Tax Act); *David D. v. Dartmouth School Committee*, 775 F.2d 411, 423 (1st Cir.1985) (Education For All Handicapped Children Act), cert. denied, 475 U.S. 1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986).

■ It is true that appellants ask the court to ascertain what the standard of need is under Connecticut law, but ascertaining state law is "an everyday function of the federal court, in cases ranging from those falling within our diversity or pendent jurisdiction, to those brought under § 1983 which claim deprivation of a state-created property right." *Everett*, 772 F.2d at 1119. See, e.g., *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (in determining whether there is a deprivation of property without due process of law federal courts must look to state law to determine whether there is a property interest). Once the state's "true" standard of need is determined, it is a violation of *federal* law for the Commissioner not to use it in applying 42 U.S.C. § 602(a)(17). That he might also violate state law by failing to apply it is simply not controlling on the issue whether the eleventh amendment bars this suit. *Pennhurst II* only "proscribes federal courts from requiring states to conform their conduct to state law *qua* state law." David D., 775 F.2d at 423.

The question of whether the federal statute here actually incorporates state law with respect to the standard of need, or merely mandates that the state adopt a standard of need and report that standard to HHS and use it in applying the lump-sum rule, is one of subtle distinction which we need not address at this time. The important point is that federal law mandates that the Commissioner employ a "standard of need" and that appellants' claim that the Commissioner has failed to do so is sufficient to withstand an eleventh amendment challenge. Whether the "standard of need" as mandated by federal law is defined solely by state statute, by the conduct of the Commissioner, by the figures included in the state AFDC plan, or by a combination thereof, is a question for the district court to consider in the first instance in determining whether appellants' claim has any merit.

■ The Commissioner also argues that the action should be dismissed for mootness because the named plaintiffs are no longer ineligible for AFDC benefits under 42 U.S.C. § 602(a)(17). We disagree. The district court was correct in holding that appellants' claim falls squarely within the "capable of repetition, yet evading review" doctrine. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 398, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980); *Sosna v. Iowa*, 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 559 n. 11, 42 L.Ed.2d 532 (1975).

With all this said, it is far from clear that there is merit to appellants' claim. Both the magistrate and the district judge apparently agree that § 17–2(a) merely establishes a requirement that the Commissioner report to the legislature each year on the effects of inflation on the state's standard of need, and that it is up to the legislature to act upon those reports as it sees fit in adjusting the standard of need, which it apparently has done several times in the past few years. We do note that before § 17–2(b) was amended in 1978 that section specifically addressed the "payment level" for AFDC benefits, possibly implying that, at least at that time, the "standard of need" was established pursuant to § 17–2(a). Of course, we express no view as to the merits of such an argument.

The Commissioner argues on appeal that the standard of need figures established under § 17–2(b) are those set forth in the Department's Policy Manual and in the AFDC state plan, as further proof that these figures represent the state's true standard of need. He adds that the standard of need figures are equal to the level

of benefits, asserting that Connecticut is not a "ratable reduction" state as appellants' claim suggests. He stresses that appellants have not alleged in the complaint that the Department uses the updated figures reported to the legislature in accordance with § 17–2(a) in any official way for the purposes of administering the AFDC program. While these may be valid arguments, we believe that they, and any other relevant contentions, should be fully considered in the first instance by the district court which ruled, in effect, that it did not have jurisdiction to consider them.

We therefore reverse and remand the case to the district court for further proceedings. We note in passing that the Supreme Court has indicated that

> Whenever possible the district courts should obtain the views of [HHS] in those cases where it has not set forth its views, either in a regulation or published opinion, or in cases where there is real doubt as to how the Department's standards apply to the particular state regulation or program.

*Rosado*, 397 U.S. at 406–07, 90 S.Ct. at 1214–15. We also note that the interpretation of HHS is entitled to deference, see *Reed*, 107 S.Ct. at 1813 n. 3; *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), and that depending upon the course this action takes in the district court it might be useful to obtain the views of HHS as to whether the Commissioner is complying with the federal statute.

Judgment reversed and case remanded for further proceedings consistent with this opinion.

MESKILL, Circuit Judge, concurring in the result:

I concur in the result reached by the majority but write separately because I disagree with the conclusion that the district court did not decide the merits of plaintiffs' statutory argument. Even though Judge Burns dismissed the action for lack of subject matter jurisdiction, before doing so she also considered the merits of plaintiffs' claims. Magistrate Margolis and Judge Burns both concluded that Conn.Gen.Stat. § 17–2(a) only requires the defendant to compute a redetermination of the components of the standard of need to reflect changes in the costs of living, and then report these findings to the legislature, contrary to the plaintiffs' position that section 17–2(a) establishes the state's standard of need. In addition, Judge Burns, in her discussion of why the plaintiffs' claim concerning section 17–2(a) is barred under *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), stated:

> The interpretation of § 17–2(a) which plaintiff suggests, as a matter of statutory construction, appears at odds with § 17–2(b) in which the legislature had mandated certain percentage increases in the standard of need for each of the years 1985, 1986, 1987 and 1988. Conceivably those mandated increases could be at odds with the annual revisions in the components of the standard by the commissioner. What then is *the* standard of need? The more persuasive interpretation is that the data reported by the commissioner is provided for assistance to the legislature in enacting increases in the state's standard of need.

*See* J.App. at 109, 111 n. 2.

The district court's reasoning on the proper interpretation of the statute is convincing. In addition, the court's conclusion that section 17–2(b), rather than section 17–2(a), establishes the state's standard of need is bolstered by the language of the statute itself. Section 17–2(b) explicitly provides that "[o]n July 1, 1986, July 1, 1987, and July 1, 1988, the commissioner shall increase the *standard of need* over that of the previous fiscal year under the program of aid to families with dependent children...." (emphasis added). Plaintiffs ask the court to ignore the plain language of section 17–2(b) and conclude that it refers instead to Connecticut's payment level. Plaintiffs add that Connecticut's "true" standard of need is established by section 17–2(a). But that section doesn't establish a standard of need. It only requires the

Commissioner to compute annually a redetermination of "all components of the *standards of need for the several programs administered by the department* so as to reflect changes in living costs," and to report his findings to the general assembly. (emphasis added). The majority implies that plaintiffs' arguments might have merit if one considers the language contained in the statute before it was amended in 1978. I believe that it is more appropriate to focus on the language of the statute as it is now written, language which I conclude is fatal to plaintiffs' position.

Had Judge Burns dismissed the action on the merits under Fed.R.Civ.P. 12(b)(6) or 56, rather than because of a lack of subject matter jurisdiction, I would affirm. In this case, however, she considered the merits of plaintiffs' claim, and then dismissed the action for lack of subject matter jurisdiction. This was improper. *See Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Abraham v. Volkswagen of America, Inc.,* 795 F.2d 238, 243 (2d Cir.1986); *Fogel v. Chestnutt,* 668 F.2d 100, 105–07 (2d Cir.1981), *cert denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed. 2d 66 (1982). When the jurisdictional facts are intertwined with the merits of plaintiffs' claims, as they were in this case, a court should assume that jurisdiction exists, and then proceed to determine the merits of the claim. *See* 2A J. Moore, J. Lucas and G. Grotheer, Jr., *Moore's Federal Practice* ¶ 12–07[2.–1], at 12–50 to 12–53 (2d ed. 1987). Accordingly, I concur with the decision of the majority to remand the action to the district court.