HENRIETTA D., Nidia S., Simone A., Ezzard S., John R.,and Pedro R., on behalf of themselves and others similarly situated, Plaintiffs.

v.

Rudolph GIULIANI, Mayor of the City of New York, Marva Hammons, Administrator of the New York City Human Resources Administration and Commissioner of the New York City Department of Social Services, and Mary E. Glass, Commissioner of the New York State Department of Social Services, Defendants.

No. 95 CV 0641 SJ.

United States District Court, E.D. New York.

Jan. 24, 2000.

HIV Law Project, New York City, by Theresa M. McGovern, Ricardo A. Castro, for plaintiffs.

Housing Works, Inc., New York City, by Michael Kink, Virginia G. Shubert, for plaintiffs.

Winthrop, Stimson, Putnam & Roberts, New York City, by Susan J. Kohlmann, Karen B. Dine, Armen H. Merjian, for plaintiffs.

Brooklyn Legal Services Corp. B, Brooklyn, NY, by Lauren Shapiro, John C. Gray, Jr., Cynthia Schneider, for plaintiffs.

Michael D. Hess, Corporation Counsel, The City of New York Law Department, New York City, by Georgia Pestana, Michele Lerner, for defendant City of New York.

Elliot Spitzer, Attorney General of the State of New York, New York City, by Vincent Leong, Anne H. Bomser, Assistant Attorney General, for defendant State of New York.

Schwartz, Klink, Schreiber, P.C., New York, NY, by Clinton F. Jr. Eubanks, Jr., for defendant State of New York.

## MEMORANDUM AND ORDER

JOHNSON, District Judge.

This class action is brought by New York City residents with AIDS or HIV-related illnesses who are seeking access to publicly subsidized benefits. The plaintiffs sued city and state officials and departments claiming violations of the Americans with Disabilities Act ("ADA"), the Medicaid Act, Section 504 of the Rehabilitation Act of 1974, as well as other claims. Presently before this Court are State and City defendants' motions for summary judgment. For the reasons stated below, summary judgment motions of City and State defendants are denied. State defendant's motion to dismiss state law claims is granted.

## BACKGROUND

Plaintiffs in this case are a class of disabled persons [1] suffering from AIDS or clinical/symptomatic HIV.[2] They are all

1. There is no dispute that members of the plaintiff class fall within the definition of 'disabled' under federal and state law. *See* City Def.Mem.Law at 10.

2. Henrietta D., Nidia S., Simone A., Ezzard S., John R., and Pedro R. are the named representatives of a plaintiff class composed of "all DAS[IS]-eligible persons, *i.e.*, persons who are New York City residents, are Medicaid eligible and meet the medical condition of having either (1) CDC-defined AIDS, or (2) an HIV-related condition and a need for home care services." *See Henrietta D. v. Giuliani*, 1999 WL 633382 at 16.

eligible for public assistance benefits. However, because of their HIV-related illnesses, plaintiffs have particular difficulty accessing and negotiating the social service system. The onerous application processes, ongoing documentation requirements, frequent mandatory office appointments, and protracted waiting room delay characteristic of public benefits systems have potentially serious consequences for people with clinical/symptomatic HIV or AIDS; their particular susceptibility to infection, and the ease with which minor infections may profoundly threaten their health, render the establishment and maintenance of eligibility for public benefits a potentially life-threatening endeavor.

At the commencement of this litigation, members of the plaintiff class received publicly subsidized benefits through the Human Resources Administration's ("HRA") Division of AIDS Services ("DAS") and it Income Support/AIDS Services Program. Presumably in an attempt to expedite access to essential social services, DAS was restructured from 1995–1997. The case management system was eliminated. DAS and IS/AS were consolidated into the Division of AIDS Services and Income Support ("DASIS"), the department that currently facilitates the provision of public benefits and services to the plaintiff class. However, these changes did not operate to increase DASIS' efficacy and the New York City Council reviewed the issue in 1997.

As a result. New York City Council enacted, and Mayor Rudolph Giuliani signed into law, Local Law 49, also known as the DASIS Law.[3] Its effect was to mandate the provision of a broad range of benefits and services to people with AIDS or clinical/symptomatic HIV illness. In addition. DASIS was formally established as the organization charged with ensuring persons with clinical/symptomatic HIV meaningful and equal access to public services and benefits. Through the DASIS Law, New York City prescribed a mechanism to ensure access to public benefits and services for anyone suffering from AIDS or HIV-related diseases. Its provisions include, but are not limited to, intensive case management, transportation and nutrition allowances, and assistance in establishing and maintaining eligibility for public benefits. However, despite the clear intent of the New York City government to resolve this issue, plaintiffs here allege continuing violations of the ADA, and other federal state, and municipal laws which DASIS was supposed to enforce.

Plaintiffs have brought this action against the City and State of New York ("defendants"), alleging violations of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12101 et seq.;[4] Section 504 of the Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 794;[5] the Medicaid Act, § 42 U.S.C. 1396a(a)(8), 1396a(a)(19), and other regulations.[6] They claim that the functional limitations faced by persons with AIDS or HIV-related diseases re-

---

**3.** Local Law 49 is codified at § 21–126 et seq. of the New York City Administrative Code. The DASIS Law undid much of the restructuring DASIS had undergone in the two years prior to its enactment: it restored a case management system which had been eliminated and established firm, comparatively low case manager-to-client ratios. *See* N.Y.C.Admin.Code § 21–127.

**4.** The ADA provides, in pertinent part: "no qualified individual with a disability shall, by reason of such disability, be ... denied the benefits of the services [or] programs ... of a

public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132

**5.** Section 504 reads in pertinent part: "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, ... be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."

**6.** Henrietta D. died shortly after this case was filed on February 28, 1995.

quire reasonable modifications to the City's policies and practices to assure equal and meaningful access to public benefits.[7] Plaintiffs have also sued the Commissioner of the New York State Department of Social Services for violations of New York State statutory and common law in failing to supervise New York City's provision of benefits and services.

Plaintiffs contend that they cannot access public benefits already available to all indigent New Yorkers and for which they are eligible. Insufficient staffing, intentional or unintentional disregard of the law, and its own policies render DASIS systemically incapable of discharging its obligations. Plaintiffs cite widespread, systemic failure and delay in activating initial benefits and services, processing applications, obtaining correct and adequate subsistence budgets. Plaintiffs have also suffered from repeated improper case closures: difficulty in getting case managers to perform required field visits, to issue initial rent and special moving grants, to process housing applications and referrals, and to process requests for payment of rent arrears. In each of these areas, plaintiffs contend that DASIS is not in compliance with federal disability regula-

tions, nor with the structure installed by the DASIS Law.

## JURISDICTION & PROCEDURAL HISTORY

The instant case was filed on February 14, 1995. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction, as this case arises from claims under federal statutory and constitutional law.[8] To the extent that this Court lacks jurisdiction over plaintiffs' state law claims, the Court invokes its discretion under 28 U.S.C. § 1367 to exercise supplemental jurisdiction to the full extent that the statute allows.[9]

On October 25, 1996, this Court certified the plaintiff class and denied defendants' motion to dismiss for lack of justiciability or for lack of subject matter jurisdiction. *See Henrietta D., et al v. Giuliani, et al.,* No. 95–CV0641, 1996 WL 633382 (E.D.N.Y. Oct. 25, 1996). The Court also denied plaintiff's application for a preliminary injunction.[10] Defendants now seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, claiming that no triable issue of fact remains and that judgment as a matter of law is appropriate in this case.

---

7. For example, due to the heightened risks of infection faced by plaintiffs, it is especially important that plaintiffs receive their benefits in a timely manner.

8. The Court refers defendants to its prior ruling in this case on the issue of subject matter jurisdiction over plaintiffs' Medicaid Act and Food Stamp Act claims. *See Henrietta D. v. Giuliani,* 1996 WL 633382 at *4.

9. Under 28 U.S.C. 1367(a), a district court may assert supplemental jurisdiction over non-federal claims that are so related to the federal claims within its original jurisdiction that they form part of the same case or controversy under Article III of the States Constitution. State and federal claims form 'one case or controversy' when they "derive from a common nucleus of operative facts" or "when both claims would normally be expected to be tried in a single judicial proceeding." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218

(1966). Generally, when either condition is satisfied, the court's exercise of supplemental jurisdiction, not automatic, would be a favored and normal course of action. *See Promisel v. First American Artificial Flowers, Inc.,* 943 F.2d 251, 254 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992).

10. Plaintiffs had asked this Court to enjoin City defendants from altering or reducing the present structure and functions of DAS without showing how any alteration would better enable defendants to comply with their obligations to provide plaintiffs with meaningful and equal access to programs, benefits, and services. *Id.* Plaintiffs also requested that the Court compel State defendants to comply with their legal requirement to supervise the City in its administration of federal and state benefit programs. *Id.*

## DISCUSSION

### I. Eleventh Amendment

#### A. Standard for Motion to Dismiss

 State defendant moves to dismiss the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, claiming the Eleventh Amendment immunity afforded states strips this Court of subject matter jurisdiction.[11] A court may dismiss an action pursuant to Rule 12(b)(1) if the Court does not have subject matter jurisdiction to hear a claim, *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir. 1995).

11. The Eleventh Amendment bars from federal court all suits for relief brought by citizens against unconsenting states and agencies of such states, absent a, valid congressional override. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

12. The Eleventh Amendment provides that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
U.S. Const.Amend. XI.

13. Congress included language expressly abrogating states' Eleventh Amendment immunity in both the ADA and the Rehabilitation Act. *See* 42 U.S.C. § 12202 and § 2000d–7(a)(1). Furthermore, the Second Circuit recently found that Congress validly abrogated states' Eleventh Amendment immunity in the ADA and the Rehabilitation Act. *See Muller v. Costello*, 187 F.3d 298, 311 (2d Cir.1999) ("Congress's enactment of the ADA was within its authority under § 5 of the Fourteenth Amendment and its abrogation of states' Eleventh Amendment immunity is effective."). Using the framework established by the Supreme Court in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55–58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the circuit court found that state officials could not invoke the Eleventh Amendment as insulation from violations of the ADA and Rehabilitation Act.

### B. Federal Law Claims

 State defendant claims that the Eleventh Amendment affords immunity to plaintiffs' claims.[12] Defendant cites *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), where the Supreme Court ruled that federal courts are barred from granting injunctive relief for violations of state law by state officials.

While this is an accurate statement of the holding in *Pennhurst*, that doctrine represents an exception to the rule of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that the Eleventh Amendment does not always bar suits against state officials to enjoin violations of *federal* law.[13] If this Court finds that

Defendants, however, make mention of the possible unconstitutionality of the Second Circuit holding, and of Congress's abrogation of states' Eleventh Amendment immunity. The Supreme Court very recently had occasion to determine the constitutionality of a similar provision in the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, § 29 U.S.C. 621 et seq. (1994 ed. and Supp. III), which bars discrimination on the basis of age. *See generally Kimel v. Florida Bd. of Regents,* —— U.S. ——, 120 S.Ct. 631, —— L.Ed. 2d —— (2000).

In *Kimel*, the Court held that Congress's abrogation of states' Eleventh Amendment immunity in claims arising under the ADEA exceeded its authority under § 5, the enforcement clause, of the Fourteenth Amendment. *Id.* at ——, 120 S.Ct. at 638. Although the Court has not said so explicitly, its holding in *Kimel* suggests that Congress's provision abrogating states' Eleventh Amendment immunity under the ADA is unconstitutional as well. *Compare State Univ. of NY, et al. v. Anderson,* —— U.S. ——, 120 S.Ct. 929, —— L.Ed.2d —— (2000) (vacating and remanding the Second Circuit's denial of Eleventh Amendment immunity to state when sued under Equal Pay Act in light of *Kimel* decision).

Although State defendant raises a sound legal argument, it is inapposite to the circumstances in this case. Here, plaintiffs have not sued the State of New York, or an agency thereof, but have sued the Commissioner of the Department of Social Services, a real person acting under color of state law. As is explained in the text accompanying this note, the line of cases springing from *Ex Parte Young* has firmly established that the Elev-

plaintiffs' claims fit the circumstances contemplated by *Ex Parte Young*, the Eleventh Amendment will not shield State defendant from liability.

■ In *Ex Parte Young*, the Supreme Court found that state officers were stripped of their state or representative authority when acting in violation of federal law. 209 U.S. at 159–60, 28 S.Ct. 441. Where a state official has the discretion to enforce state policies, *Ex Parte Young* found that the Eleventh Amendment could not immunize state officials from liability for continuing violations of federal law. As the state has no power to shield state officials from the greater authority of federal law, federal courts may afford prospective injunctive relief to plaintiffs who demonstrate continuing violations of federal law by a state actor.[14]

In this case, the plaintiff class has sued the Commissioner of the New York State Department of Social Services. Plaintiffs claimed violations of the ADA and other laws in failing to supervise the provision of public services in New York City and in failing to ensure local compliance with the laws governing the plaintiff class's access to these services. Plaintiffs have not sued the state itself or an agency thereof. However, plaintiffs have put forth evidence and allegations sufficient to imply State defendant's liability. Thus, the federal claims against State defendant are not improper under the Eleventh Amendment; they fall clearly within the ambit of the doctrine of *Ex Parte Young*.

Finally, the Supreme Court has also said that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily creat-

ed right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex Parte Young*." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). However, this mandate engenders no conflict with this Court's holding that plaintiffs' action against the Commissioner of the New York State Department of Social Services may continue.

To the degree that Congress has prescribed a remedial scheme for the enforcement of the statutorily created rights of the ADA, the constitutionality of that remedy remains unclear in light of the Court's holding in *Kimel v. Board of Regents*, —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), and its subsequent action in *State Univ. of NY, et al. v. Anderson*, 2000 WL 29247 (U.S. Jan.18, 2000) (vacating and remanding Second Circuit's denial of Eleventh Amendment immunity when state sued under Equal Pay Act in light of *Kimel* decision).

Since the constitutionality of the congressionally prescribed enforcement mechanism under the ADA is questionable, allowing these plaintiffs to maintain their suit under the doctrine of *Ex Parte Young* does not amount to a supplementary, judicially-created enforcement mechanism. To the contrary, this is precisely the situation contemplated by the doctrine of *Ex Parte Young*; plaintiffs here seek only prospective injunctive relief in order to end a continuing violation of federal law. State defendant's motion to dismiss federal claims is denied.

## C. State Law Claims

■ Insofar as the plaintiffs seek remedies from State defendant solely for violations of *state* law, such claims must be

enth Amendment does not bar federal courts from granting prospective injunctive relief against a state official for continuing violations of federal law.

**14.** Further, it should be noted that a state officer's violation of state law will not insulate

him or her from liability for concurrent violations of federal law. *Everett v. Schramm*, 772 F.2d 1114, 1119 (3d Cir.1985) (quotations omitted). Plaintiffs' claims rest largely within federal anti-discrimination law and, thus, are not barred by the Eleventh Amendment.

dismissed.[15] State defendants are correct in noting that the Supreme Court in *Pennhurst* held the Eleventh Amendment bars federal courts from enjoining state officials from violating state law. 465 U.S. at 120–121, 104 S.Ct. 900. This Court's power to assert supplemental jurisdiction under 28 U.S.C. § 1367 is thus curtailed in this context. State defendant's motion to dismiss state law claims is granted.

■ However, while plaintiffs may not seek redress under state law, plaintiffs are not barred from satisfying their burden of proof on the elements of their federal law claims using definitions, obligations, and responsibilities found in state law. Plaintiffs may use state law, and evidence of State defendant's liability under it, to prove that State defendant is in violation of federal law. Where plaintiffs use non-compliance with state laws to demonstrate non-compliance with federal statutes, such as the ADA, the Eleventh Amendment is not implicated.

## II. Summary Judgment

### A. Standard for Summary Judgment

To succeed in obtaining summary judgment, a defendant must "show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *LaFond v. General Physics Svcs. Corp.*, 50 F.3d 165, 171 (2d Cir.1995) (citations and internal quotations omitted).

In determining whether there is a general issue as to any material fact, moreover, "the trial court is required to resolve all ambiguities and draw all inferences in favor of the party against whom summary

judgment is sought." *Id.* at 175. "The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995).

Once the movant has come forward with appropriate support demonstrating that there is no genuine issue of material fact to be tried, the burden shifts to the non-moving party to present similar support setting forth specific facts about which a genuine triable issue remains. *See Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. Mere conclusory allegations will not suffice. Instead, the nonmoving party must present "significant probative supporting evidence" that a factual dispute exists. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

### B. Analysis

City defendants cite several cases for the proposition that the city is in compliance with the requirements of the ADA and other laws pertaining to the plaintiffs' claims and is entitled to judgment as a matter of law. According to City defendants, plaintiffs' claims are legally foreclosed by Supreme Court caselaw, including *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (court found ADA does not prohibit limit on Medicaid reimbursement for hospital stays despite undisputed disproportionate impact on disabled persons), and Second Circuit caselaw, including *Rodriguez v. City of New York*, 197 F.3d 611, 1999 WL 795552 (2d Cir. October 6, 1999) (ADA does not require provision of additional benefits to the disabled, merely equal access to those already available); *Doe v. Pfrommer*, 148 F.3d 73 (2d Cir.1998) (ADA requires only that a particular service provided to some not be denied to disabled people); *Flight v. Gloeckler*, 68 F.3d 61, 63–64 (2d Cir. 1995) (dismissal of ADA and Rehabilitation

---

**15.** Although the state claims are barred, the Court notes in passing that the Eleventh Amendment is not implicated where compliance with federal law entails addressing violations of state law. *See e.g., Mont v. Heintz,* 849 F.2d 704, 710 (2d Cir.1988).

Act claims proper where plaintiff alleged only the denial of a benefit available only to disabled persons); *Lincoln Cercpac v. Health & Hosps. Corp.*, 147 F.3d 165, 167 (2d Cir.1998). The Court finds these cases inapposite to the facts and issues presented in the case at bar.

In *Rodriguez*, the plaintiffs sought the addition of safety monitoring to New York's personal-care services package, claiming they were effectively denied services because of their disability. In reversing the district court, the circuit cited the ADA's non-discrimination standard. *Rodriguez*, 197 F.3d 611, 617–19. Compliance with the ADA required non-discrimination only: New York State need only ensure equal and meaningful access to the services already offered in its personal care services package and elsewhere.

City defendants interpret the holding in *Rodriguez* broadly in support of the proposition that the ADA and the Rehabilitation Act require only that "services provided to the non-disabled not be denied to the disabled." Def.Mem.Law at 13. This is an overbroad reading of the circuit's holding.

The Second Circuit reaffirmed that the meaningful access to public services envisioned by the ADA's mandate of "reasonable accommodation" could be limited to ensuring access to services already available to non-disabled persons. *Id* at 619. Even if the state has not denied disabled persons a service or benefit available to non-disabled persons, the state still retains the affirmative responsibility to ensure disabled persons have equal and meaningful access to that benefit.

The Court finds that the provisions of *Rodriguez*, and other controlling decisions in this area, are not antagonistic to the relief sought by plaintiffs in this case. Here, the plaintiff class has made it very clear that it makes no substantive challenge to the benefits and services available to the class members. Plaintiffs do not challenge the amount or adequacy of the

benefits available to them; they seek equal and meaningful access to benefits already available to them. The plaintiff class brings claims based entirely on its inability to access publicly subsidized benefits and services to which they are entitled.[16]

### 1. City Defendants' Compliance

■ Although defendants' claim that no triable issues of fact exist, it seems that considerable factual disputes remain in this case. City defendants cite the quarterly DASIS report as proof that DASIS is an efficient and effective method of facilitating its clients equal and meaningful access to public benefits. Plaintiffs counter with expert testimony and sworn client statements that indicate just the opposite. Plaintiffs also cite evidence that defendants have admitted they do not compile and are unable to determine much of the systemic information they are legally required to report. Pl.Rule 56.1 Stmt. at ¶ 38.

Credibility is not an issue on summary judgment; the Court is to draw all reasonable inferences and resolve all genuine factual disputes in favor of the nonmoving party. For purposes of the motion, the nonmovant's evidence is presumed true.

In this case, that presumption reveals genuine issues of material fact that are in dispute. These issues include, among others: whether DASIS operates to ensure equal and meaningful access to public benefits; whether the quarterly DASIS report credibly and reliably discloses DASIS' efficacy; whether DASIS is in violation of the DASIS Law regarding mandated ratios of case managers and supervisors to clients and regarding the statistical record-keeping and reporting requirements of the Law; whether DASIS is processing applications and facilitating the provision of services within the legally mandated time frame for enhanced rental assistance and other areas of assistance. Thus, defendants have failed to meet their burden of establishing the absence of any genuine

---

**16.** Plaintiffs' entitlement to public benefits and services is not in dispute.

factual disputes. City defendants motion for summary judgment is denied.

### 2. State Defendant's Compliance

State defendant claims that plaintiffs' 'failure to supervise' claims must be dismissed due to lack of causation and because the state has satisfied its duty to supervise New York City's provision of public benefits through the administrative fair hearing process.

Plaintiffs, on the other hand, argue that state defendant is liable for failure to act since the provisions of the ADA and the Rehabilitation Act require affirmative efforts to assist plaintiffs in getting their benefits. Plaintiffs allege the State has two responsibilities: the provision of benefits to eligible recipients, and under the ADA and the Rehabilitation Act, the provision of meaningful and equal access to these benefits to persons living with AIDS and clinical/symptomatic HIV. In both areas, State defendant's responsibility is largely supervisory since local agencies administer most social services programs. Plaintiffs contend that State defendant's failure to supervise New York City's provision of benefits denied the plaintiff class meaningful and equal access to the provision of benefits and led directly to the injuries for which plaintiff seek redress.

Plaintiffs may well be able to prove State defendant's non-compliance with the federal disability discrimination regulations. Plaintiffs have noted that New York State law expressly requires State defendant to supervise the provision of services by New York City.[17] "In the administration of public assistance funds, whether they come from Federal, State, or local sources, the authority and responsibility is that of the county commissioners of social services, not the counties; the local commissioners act on behalf of and as agents for the State." *Matter of Beaudoin v. Toia,* 45 N.Y.2d 343, 408 N.Y.S.2d 417, 380 N.E.2d 246, 247 (1978).

Plaintiffs also highlight State defendant's responsibility to ensure compliance with the ADA despite the fact that DASIS is a new York City program. "Under the Federal and the State statutory schemes, State social service agencies have complete supervisory authority over the local departments." *Tormos v. Hammons,* 259 A.D.2d 434, 687 N.Y.S.2d 336 (1st Dept. 1999). Under New York law, State defendant's mission and mandate is clear. However, genuine factual questions preclude a finding that the State defendant is acting in compliance with either its charter or the ADA, or that plaintiffs have not stated viable legal claims in this context. It is unclear whether plaintiffs have the opportunity to fully address their concerns with DASIS services in the fair hearing process. Numerous fact questions remain concerning the scope, feasibility and nature of State defendant's supervisory authority under New York State law and the ADA and Rehabilitation Act. Additionally, the State has not come forward with evidence of reasonable modifications made with the intent to insure equal and meaningful access to the provision of services for people with AIDS. The Court finds that material issues of fact prevents judgment as a matter of law on these claims. State defendant's motion for summary judgment is denied.

### CONCLUSION

Based on the foregoing reasons, defendants' motions for summary judgment are DENIED. State defendant's motion to dismiss state law claims is GRANTED.

---

**17.** New York Social Services Law § 20(2)(b) (1993) provides in pertinent part:

The department shall, as provided in this chapter ... (b) supervise all social services work, as the same may be administered by any local unit of the government and the social services officials thereof within the state, advise them in the performance of their official duties and regulate the financial assistance granted by the state in connection with said work.

**434**

State defendant's motion to dismiss federal law claims is DENIED.

SO ORDERED.